## STATE *v.* BROWN.

[41 Pac. 1042.]

1. Disqualification of Grand Juror*—Code, § 947, Subdivision 4—"Cause" Defined.—Hill's Code, § 947, providing that it shall be a sufficient cause of challenge to any juror called "to be sworn in any cause" that he has served as a juror within a year, does not apply to grand jurors, for a "cause" within the meaning of that section is a civil or criminal action at issue and ready for trial in a circuit court of Oregon, and grand jurors are not required to try such matters.

2. Actual Bias of Juror—Discretion of Court—Code, § 187.—Under Hill's Code, § 187, providing that the fact that a juror has formed an opinion as to the merits of a case is not sufficient to sustain a challenge unless the court is satisfied from all the circumstances that the juror cannot disregard such opinion and try the case impartially, a clear abuse of discretion in allowing one to act as juror who has stated that he has formed an opinion must be shown to procure a reversal of the judgment on that ground, and in this case the facts set forth do not disclose any such conduct by the trial court: *State* v. *Saunders,* 14 Or. 300; *Kumli* v. *Southern Pacific Company,* 21 Or. 505, cited and approved.

*The qualification of grand jurors is the subject of a very interesting and exhaustive note to the Iowa case of *State* v. *Russell,* 23 L. R. A. 195. There is also a monograph on the competency of grand jurors, the grounds on which they may be challenged, and the organization and duties of grand juries with the Pennsylvania case of *Commonwealth* v. *Green,* 12 Am. St. 900. See, also, note to *Commonwealth* v. *Woodward,* 34 Am. St. 304.—Reporter.

3. RES GESTÆ.* — The remarks and statements made by a defendant as he was hurrying from the scene of his crime, and immediately after its commission, are admissible as part of the *res gestæ*; as, for example, evidence that defendant ran away from the place of the shooting, with a pistol in his hand, shouting, "I am the toughest son of a bitch that ever struck this town," is competent on the question of malice, for it is closely connected with the principal event, and tends to show the state of the defendant's mind.

4. IMPEACHMENT — FOUNDATION. — A witness on a trial for murder may be impeached by members of the grand jury as to the testimony given by her before such jury where the proper foundation has been laid.†

5. EXPERT WITNESS. — A nonexpert witness may properly testify as to whether a person seemed excited or otherwise at a specified time.

6. IMPEACHING EVIDENCE — PRESUMPTION. — The necessary preliminary questions to render an impeaching question proper will be presumed to have been asked and answered where the record does not purport. to contain all the evidence.

7. CRIMINAL LAW — FAILURE TO ASK INSTRUCTIONS. — Failure of the court to instruct the jury not to be influenced in their verdict by any applause made by the audience in approval of the remarks of the prosecuting attorney is not cause for reversal, where no such instruction was asked, and the court promptly disapproved such applause.

8. INSTRUCTION — USURPING PROVINCE OF JURY — CODE, § 200. — An instruction on a murder trial that there is evidence "to the effect" or "tending to show" a certain fact, and allowing the jury, if they find it to be a fact, to consider it in determining the degree of defendant's guilt, does not, as being a presentation of facts by the court, violate Hill's Code, § 200, prohibiting the court from presenting the facts of a case to the jury, especially where the jury are also in-

---

*How soon after the main event declarations must be made in order to constitute part of the *res gestæ* in criminal cases, is considered in a note in 19 L. R. A. 737–745. The subject is also discussed in *Lewis* v. *State*, 25 Am. St. Rep. 720, and *Johnson* v. *State*, 28 Am. St. Rep. 930. — REPORTER.

†The passage in appellant's brief on this point is as follows: "No proper foundation was laid to permit said grand jurors to testify that the witness was not excited when testifying before them, and if such foundation had been laid, it was an immaterial matter, and a witness cannot be impeached on immaterial issues. A witness cannot be impeached by contradictory evidence or inconsistent statements on immaterial and irrelevant matters, nor in any case without the proper foundation is laid by calling the witness' attention to time, place, and circumstances: *Winn* v. *State*, 28 S. W. 807; *Blough* v. *Parry*, 40 N. E. 70." It will be seen that this case is not an authority for calling grand jurors as impeaching witnesses. That question was, however, fully argued and explicitly decided in *State* v. *Moran*, 15 Or. 262. — REPORTER.

structed that they are the exclusive judges of all the facts in the case, as well as the weight of evidence and credibility of the witnesses.

9. INSTRUCTIONS NEED NOT BE DUPLICATED.— A requested instruction that has been already given in another paragraph need not be given again.

10. ERROR NOT PRESUMED.— An instruction will be presumed on appeal to have been properly refused where the record does not purport to contain all the evidence.

APPEAL from Douglas: J. C. FULLERTON, Judge.

The defendant Samuel G. Brown having been indicted, tried for, and convicted of, the crime of murder in the first degree, by shooting and killing William Alfred Kincaid, in Douglas County, moved for a new trial, which was denied, and he was sentenced to be hanged. From this judgment he appeals, and assigns as error the denial of a motion to set aside the indictment; the refusal to sustain challenges submitted to trial jurors; the admission of improper evidence; and the giving and refusal of certain instructions. The record discloses that the defendant at the proper time submitted a motion to set aside the indictment for the reason that it had not been found as required by law, and filed therewith the following affidavit: "I, A. M. Crawford, being duly sworn say I am attorney for Samuel G. Brown, the above named defendant, and that Theodore Andrews; who is now a member of the grand jury which found the indictment in this case against said defendant Samuel G. Brown, has been summoned and served as a juror in a cause tried in this court within less than one year prior to the finding of the indictment against said Samuel G. Brown, and is, and was when this indictment was found not competent to act as a juror." In disposing of this motion the following order was made: "And the court, after hearing the arguments of counsel and being fully

advised in the premises, overrules and denies said motion," to which ruling an exception was saved. It is contended on behalf of the defendant that the grand juror was incompetent, and, having challenged his competency and submitted evidence showing the want thereof, the court erred in not setting aside the indictment; while in behalf of the state it is insisted that his competency was a question of fact to be tried by the court, and as the record is silent as to the means adopted to reach the conclusion announced, it cannot be ascertained whether the court found the statement's contained in the affidavit untrue, or the motion insufficient in law.          AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. William R. Willis* and *A. M. Crawford*.

For the state there were briefs and oral arguments by *Messrs. Cicero M. Idleman,* attorney-general, *L. Loughary,* and *George M. Brown,* district attorney.

Opinion by MR. JUSTICE MOORE.

1.   Without attempting to discuss the proposition contended for, but treating the facts stated in the affidavit as admitted, we shall examine the grand juror's competency as a question of law.   In the formation of the grand jury, the statute, in general terms, provides that from a list containing the names of two hundred persons made from the last preceding assessment roll of the county by the county court, denominated the jury list, (Hill's Code, §§ 952–956,) thirty-one names shall be drawn, (section 958,) from which number so selected and in attendance upon the circuit court the names of seven shall be drawn to act as grand jurors (section 943); and it is made the duty

of the court, before accepting a person so drawn as a grand juror, to be satisfied that he is duly qualified to act as such (section 1233); and no challenge is allowed to the panel from which the grand jury is drawn, nor to an individual juror, unless when so made by the court for want of qualification (section 1234). Section 947, Hill's Code, provides that "a person is not competent to act as a juror unless he be: 1. A citizen of the United States; 2. A male inhabitant of the county in which he is returned, and who has been an inhabitant thereof for the year next preceding the time he is drawn or called; 3. Over twenty-one years of age; 4. In the possession of his natural faculties and of sound mind. Nor is any person competent to act as a juror who has been convicted of any felony, or a misdemeanor involving moral turpitude. No person shall be summoned as a juror in any circuit court more than once in one year, and it shall be sufficient cause of challenge to any juror called to be sworn in any cause that he has been summoned and attended said court as a juror at any term of said court held within one year prior to the time of such challenge, or that he has been summoned from the bystanders or body of the county and has served as a juror in any cause upon such summons within one year prior to the time of such challenge." The correct interpretation of this section must be decisive of the alleged error of which the defendant complains. The object of the legislative assembly in the passage of the latter part of this section was manifestly twofold: *First,* to relieve a person from performing more than his share of jury duty; and, *second,* to prevent persons who make a business of sitting on juries, known as professionals, from being called to act as jurors in any cause before the circuit court at intervals of less than

one year. The affidavit in support of the motion fails
to show that Andrews did not possess all the qualifi-
cations prescribed by the statute, or that he had ever
been convicted of any felony or misdemeanor involv-
ing moral turpitude; so that if he was disqualified to
act as a grand juror, his incompetency must have ex-
isted by reason of the latter clause of the section
under consideration. The phrase, "in any cause," as
used in this section, evidently means a civil or crimi-
nal action at issue and ready for trial in a circuit
court of this state, and a person "called" to serve as
a juror in any such cause would be subject to chal-
lenge if he had served as a juror in said court in the
trial of any action within one year prior thereto, or
had been summoned and attended as a juror within
the same period, and a challenge upon that ground
must be held sufficient: *Wiseman* v. *Bruns,* 36 Neb. 467
(54 N. W. 858). But this provision cannot apply to
one who has been drawn as a grand juror, because
neither his duty nor oath requires him to be sworn
"in any cause," nor is he required to try an issue of
fact before the circuit court. The portion of the sec-
tion above quoted providing that no person shall be
summoned as a juror in any circuit court more than
once in one year furnishes an exemption which would
doubtless entitle the person drawn as a grand juror
to be excused from serving as such upon his own ap-
plication showing prior service within the year, if
made before being sworn; but, as we view the statute,
such prior service cannot be made a ground of chal-
lenge against him as a grand juror. Nor is this con-
clusion in contravention of the spirit or purpose of
the statute, which is intended to provide impartial and
disinterested jurors for the trial of causes; for a
grand juror, otherwise qualified, may have a bias for

or prejudice against a person charged with the commission of a crime, and might have entertained and freely expressed an opinion concerning the guilt or innocence of the accused, and yet, under our statute, neither his bias, prejudice, nor opinion would be a ground of challenge even by the court when impaneling the grand jury. The enumeration of the persons who, under the statute, are incompetent, and the insertion of the phrase "in any cause," lead us to believe that the challenge prescribed on account of the prior service of a juror is limited to persons called to be sworn as trial jurors, and has no application to members of the grand jury.

2. The court having denied challenges for actual bias submitted by the defendant to James Byron, John Price, L. Ash, John Hancock, L. L. Hurd, J. A. McCallister, J. B. Caulfield, and L. L. Marsters, who were called as grand jurors, he peremptorily challenged the first four, thereby exhausting his right to that class of challenges; and the others having been impaneled, it is contended that the court erred in denying the said challenges for cause. The evidence of the qualification of these persons to act as jurors having been taken before the court and incorporated in the bill of exceptions, renders an examination of it necessary. James Byron on his *voir dire* said he had heard what purported to be a statement of the facts in the case, which .he believed to be true; and from this he had formed an opinion as to the guilt or innocence of the accused; that if the facts were as he had heard them, he had a rather decided opinion, which it would require some evidence, at least, to remove; but when asked by the court if he thought he could lay aside any opinion he might have, and decide the case upon

the evidence produced at the trial, and the law as given him by the court, he answered, "Yes, sir." The questions propounded to the persons so challenged, and their answers thereto, are almost identical with the questions put to and the answers made by Mr. Byron, except that each had derived his information from the newspaper accounts of the homicide, J. B. Caulfield and L. L. Marsters adding that they had heard others express opinions in reference to the merits of the case. Section 187, Hill's Code, provides that on the trial of a challenge for actual bias, "although it should appear that a juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied from all the circumstances that the juror cannot disregard such opinion, and try the issue impartially."

In *State* v. *Saunders,* 14 Or. 300, (12 Pac. 441,) THAYER, J., in speaking of the effect produced upon persons called to act as jurors by what they had read or heard of the merits of a case, said: "This depends much upon the credulity of the persons, and the tenacity with which they adhere to preconceived notions," so that, if it were not for what was elsewhere said in the opinion, the inference would follow that if a person never believed anything he read or heard, or was incapable of retaining an opinion, he would be a competent juror, notwithstanding he had at one time formed or expressed an opinion concerning the merits of the case. But further on in the opinion the learned justice said: "The point to be determined is whether there exists such a state of mind upon the part of the juror, in reference to the party challenging, that he cannot try the case impartially and without prejudice to the

party's substantial rights; and this, the statute says, must be determined by the exercise of a sound discretion. The evidence in this case upon the question of the qualification of the jurors challenged showed that they had, to some extent, formed an opinion as to the guilt or innocence of the accused, which they said would require evidence to remove, but thought they could try the case impartially. The trial judge heard their testimony, had an opportunity to observe their manner, and deemed them qualified to sit in the case. Unless, therefore, we conclude there has been an abuse of discretion, we have no right to interfere in the decision upon that point. It was a question of fact to be determined. The impression or opinion the juror had formed was from newspaper accounts and general rumor, and the circuit court had a better understanding of the extent of the opinion than we can obtain from the bill of exceptions. This court ought not to reverse a judgment upon such grounds, unless the evidence of the juror's incompetency is pretty clear and certain, at least, shows some cogent circumstances against it, circumstances of a nature calculated to impress upon the mind of the juror a conviction, such as having heard the testimony in the case, read a detailed statement of it, or been told it by some one claiming to know." In *Kumli* v. *Southern Pacific Company,* 21 Or. 505, (28 Pac. 637,) BEAN, J., in discussing this question, said: ''It is ordinarily more safe and just to the juror and the cause of truth to trust to the impression made upon the trial court, which heard his testimony, and noticed his manner and appearance while under examination, subject to the scrutiny of counsel, than to any written or reported statement of his testimony. His tone, temperament and personal peculiarities, as exhibited on his examination, and

which do not appear in the written report of ·his testimony, are important factors in determining his competency as a juror.  If a person called as a juror on his examination, when challenged, discloses that he has a fixed and definite opinion in the case, on the merits, and nothing further is shown, the court ought, as a matter of law, to reject him as incompetent. Such a juror necessarily does not stand indifferent between the parties; and it matters little from what source he received the information upon which his opinion is based.  If, however, he has no fixed belief or prejudice, and is able to say he can fairly try the case on the evidence, freed from the influence of such opinion or impression, his competency becomes a question for the trial court, in the exercise of a sound discretion, and its findings ought not to be set aside by an appellate court unless the error is manifest."

When a crime has been committed, the local newspapers usually publish an account of it, and sometimes express opinions concerning the guilt or innocence of the person supposed to be the author of it; and the accounts being read by subscribers to these publications, produce upon their minds impressions which are in proportion to the confidence reposed in the newspaper giving them circulation.  No person of average intelligence can read such an account in his local newspaper without being more or less influenced by its perusal.  From his home paper and his associates with whom he discusses the history of a crime he forms an opinion which is predicated upon the assumption that the information obtained is true, and it may be safe to say that the person, who, after having read or heard an account of the commission of a crime in his neighborhood, has not formed an opinion concerning the guilt or innocence of the person accused of it, might

with propriety be challenged for incompetency. The
fact that he entertains such an opinion does not, under
our statute, necessarily render him incompetent to try
the accused as a juror. His mind may be so consti-
tuted that he will be able to eliminate the information
he has received, together with the impressions and
opinions derived therefrom, and impartially determine
the fact in issue. If he can do this he is competent;
and it is the duty of the court, when a person is called
to act as a juror and challenged for actual bias, to in-
terrogate him and ascertain the condition of his mind,
and from the facts elicited determine his competency.
The decision must necessarily depend largely upon
what he says, but it is not always a safe guide, for
his answers may show and he may think he is compe-
tent, when, in fact, he is not. Nor will he be allowed
to judge his own competency. While he is willing to
trust himself, the court should not be willing to trust
him, unless it is satisfied he can lay aside his informa-
tion, impressions, and opinions, and fairly and impar-
tially hear and decide. His intelligence, manner, tone,
and bearing manifested during the examination, are
elements which enter into and form a part of the evi-
dence from which the court determines his compe-
tency; and where he is in possession of the facts,
knows them to be such, and upon them has formed an
opinion, the challenge for actual bias ought to be sus-
tained, for every person accused of a crime is pre-
sumed innocent. But where a juror is in possession
of the facts, and from them has formed an opinion in
advance of the trial, it necessarily reverses this pre-
sumption, and compels the defendant to establish
his innocence, instead of requiring the state to main-
tain its charge against him. There are, in an issue
raised by a challenge for actual bias, many elements

connected with the examination and settlement of the
question which cannot, from their very nature, be made
or become a part of the bill of exceptions, and. hence
the trial court must be presumed, in the exercise of a
sound discretion, to have done its full duty; and, hav-
ing done so, its judgment should . not be reviewed, un-
less such discretion has been abused.    An examination
of the evidence offered upon the challenges submitted
fails to disclose any abuse of this discretion.

3.   Robert Dear was called as a witness on behalf
of the state, and, (after testifying that he was not ac-
quainted with the defendant, that he saw him on the
day of the homicide about two or three minutes after
it occurred, that he was running up the street with his
pistol in his hand, waving it around,) was asked, and,
over the defendant's objection and exception, was per-
mitted to aswer the following question: "What did he
say?"    To which he answered, "He said, 'I am the
toughest son of a bitch that ever struck this town.'"
T. L. Kimball, another witness on behalf of the state,
said that he was not acquainted with the defendant;
that on the afternoon of August thirteenth, eighteen
hundred and ninety-four, he was in Oakland and saw
the defendant near the depot hotel, and, being asked
what the defendant said at that time, was permitted to
answer the question, over the defendant's objection and
exception, which he did as follows: "He came up the
street waving the pistol, with his finger on the trig-
ger, and he was talking, and all I heard him say, as
he passed the hotel, was 'the toughest son of a bitch.'
That is all I heard him say."    It is contended that the
answers to these questions were inadmissible, and
tended to prejudice the minds of the jurors.    The
question here presented is whether the statements of

the defendant, made after the homicide, were admissible as a part of the *res gestæ*. This species of evidence is not admissible, as a general rule, unless it grows out of the principal transaction, illustrates its character, and is contemporaneous with it: 1 Greenleaf on Evidence, § 108. "*Res gestæ*," says Dr. Wharton in his work on Criminal Evidence, § 262, "are events speaking for themselves through the instructive words and acts of participants, not the words and acts of participants when narrating the events." The authors of the American Decisions, in their notes to *People* v. *Vernon*, 95 Am. Dec. 49, upon this subject, say: "Where the state of a person's mind, his sentiments, or disposition at a certain time is the subject of inquiry, his statements and declarations at that period are admissible." The indictment charged malice, and hence the condition of the defendant's mind at the moment of the homicide was an issue in the case, and any evidence which tended to show the state of his mind with reference to the deceased at that time was admissible.

In *McManus* v. *State*, 36 Ala. 285, the evidence showed that the defendant had an altercation with the deceased, resulting in a fight, in which the defendant threw a piece of a brick at the deceased, hitting him on the head, from the effects of which he died. About half an hour after the blow had been given, and after the fight was entirely over, the defendant, with a pistol in his hand, went to the place where the deceased was, and said that "he had come to kill the damned old rascal" meaning the deceased. An exception having been saved to the introduction of this statement in evidence, the court, in rendering its decision upon the question, said: "The circuit court did not err in admitting evidence against the prisoner of his acts, declarations, and conduct, when he returned, a half-

hour after the blow was stricken, to the scene of the engagement. The indictment was for murder, and such declarations and menacing acts tended to show the hostile feelings of the accused towards the deceased. Armed as he was with a deadly weapon, and threatening to take the life of the man he had just before assaulted with great violence, this, in the absence of sufficient provocation, was a circumstance for the jury to weigh in determining whether he had not acted with a formed design to take life. It tended to repel the idea that the fatal blow had been struck in a sudden transport of passion,—pending the *furor brevis,*—which, in a proper case, will mitigate homicide to manslaughter." In *Clampit* v. *State,* 9 Tex. App. 27, the proof showed that the deceased, having been wounded by the defendant, was taken to the home of a witness, who on the succeeding night heard some one near the house say: "I wish I had a double-barreled shotgun; I would turn both barrels loose in that room," and looking out saw the defendant. This evidence having been admitted, over the defendant's objection, it was held to be competent as tending to show malice, the court saying: "With reference to the testimony objected to and set out in the bill of exceptions, we are of opinion, in view of the other evidence, that the testimony was admissible, as tending to show the malice of the defendant towards the deceased. It was properly allowed to go to the jury for that purpose." In these cases the statements of the accused, though made some time after the assaults, clearly tended to show malice towards the persons injured by them; but in the case at bar, while the statement of the defendant may not have referred to the deceased, it was so clearly connected with the homicide as to be, in our judgment, admissible as a part of the *res gestœ,* and

tended to show such a state of mind at that moment as would authorize the jury to infer the presence or absence of malice towards the deceased.

4. Hattie Mattoon, a witness on behalf of the defendant, testified that on the day of the homicide the defendant was drunk; and that when a witness before the grand jury, in the examination of this case, she was excited; whereupon the question was asked her, "Didn't you testify in the grand jury room before the grand jury on the third day of December, eighteen hundred and ninety-four, that he was sober at the time of the killing?" and she answered, "No, sir; I did not." Question—"Didn't you testify in the grand jury room, in the presence of the grand jurors, on the third day of December, eighteen hundred and ninety-four, that Brown was not drunk?" Answer— "No, sir." The several members of the grand jury were called as witnesses for the state, and, over the defendant's objection, were permitted to testify that when Hattie Mattoon was before them as a witness she did not appear to be excited, and that she there said the defendant was not drunk on the day of the homicide. It is contended that the court erred in permitting the grand jurors to testify, but the foundation having been laid by calling her attention to the time, place, circumstances, and persons present, and her denial of the statements there made, rendered the evidence competent for the purpose of contradicting her, and the condition of her mind when a witness before the grand jury being a subject of inquiry, there was no error in permitting the jurors to testify upon that question.

28 Or.—11.

5. A witness, without being an expert, may be asked whether a person appeared excited or otherwise at a given time: Rogers on Expert Testimony, § 3.

6. W. C. Underwood, as a witness for the state, testified that he was present at the coroner's inquest held over the body of Alfred Kincaid, when Hattie Mattoon was there as a witness, and he was permitted to answer the following question: "What, if anything, did Hattie Mattoon say about stretching her testimony in order to benefit the defendant Samuel G. Brown?" to which he responded by saying: "She said that she would stretch her testimony, or color it in any way, so as to help Mr. Brown." The defendant insists that the court erred in permitting this question to be answered. The record before us does not show that any foundation was laid for asking this impeaching question, but it does not purport to contain all the evidence, and hence it must be presumed that the proper preliminary questions were asked and answered before the witness was permitted to answer it.

7. The district attorney, during the closing argument, offered to read to the jury the evidence as transcribed by the reporter, which the court denied, but permitted him, over the defendant's objection, to refresh his memory therefrom, when he remarked: "I am going to refresh my memory," at which remark the audience applauded, whereupon the court ordered the bailiffs to either keep order or clear the courtroom. The defendant assigns as error the failure of the court to instruct the jury that they should not be influenced in their verdict by any applause made by the audience in approval of the remarks of the dis-

trict attorney in his closing argument. No request was made by the defendant for such instruction, and while it is very unfortunate that the solemnity of any judicial proceeding should be interrupted by applause, and particularly so in a trial of this character, the court very promptly set its mark of disapproval thereon, and would, without doubt, have given the instruction had it been requested.

8.   Exceptions were taken to the following instructions: "30. There has been some evidence to the effect that it was the defendant who sent for the deceased, and not the mother of the deceased. If you find from the evidence that such is the fact, you have a right to consider that in connection with the evidence which tends to show that the deceased was shot by the defendant soon after he reached the spot near the house where the defendant was standing when the deceased reached there, as tending to show the purpose for which the defendant sent for the deceased, and also in determining whether the act of killing was done with premeditation and deliberation." "31. There is some evidence tending to show that the defendant, a short time before the killing, and after he had some trouble with the mother of the deceased at her home where the killing is alleged to have occurred, went out in the town of Oakland and endeavored to borrow a pistol from several parties, and to one or more of them he stated that he had some difficulty with the Deardorff family, or something to that effect; and there is evidence tending to show that after he failed to borrow a pistol he purchased one and had the same loaded; this purchase was made, according to the evidence, only a short time before the killing is alleged to have occurred;

this fact, if you find it to be a fact, you have a right to consider in connection with the circumstances and the time of the alleged killing, in determining the degree of the crime under the instructions I have heretofore given you, if you find from the evidence that a crime was committed." It is contended that these instructions are in violation of section 200, Hill's Code, which provides that "In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact." The record shows that the court in another instruction said to the jury: "You are the exclusive judges of all the facts in the case, as well as the weight of the evidence, and the credibility of the witnesses," and having so instructed it cannot be justly said that the court presented the facts of the case to the jury.

In *People* v. *Vasquez,* 49 Cal. 560, the trial court, in charging the jury, stated that "Testimony has been introduced before you tending to show that the defendant Vasquez, and others, were engaged in the robbery of one Snyder, at Tres Pinos; and while so engaged, and in the furtherance of the common purpose of Vasquez and his associates to accomplish this robbery, the deceased was slain by the defendant, or by some of the parties with whom he was then engaged in the robbery." An exception to the instruction having been taken, it was contended that it was an expression of the opinion of the judge as to the effect of the evidence adduced at the trial, but the court, in rendering the opinion, say: "The instruction is not subject to that objection. It does not charge the jury with respect to the weight or effect of the evidence, nor as

to what facts are thereby established. An instruction is not pertinent nor in any sense proper unless given in view of the evidence, as tending or not tending to prove some fact in issue; and it could not be erroneous for the court to state to the jury correctly, as was done in this case, the state of the evidence in respect to which the instructions were given." The court in the instructions complained of did not assume even that the facts had been established. It stated that evidence had been introduced tending to show that certain facts existed, but, in the first instruction, said: "If you find from the evidence that such is the fact," and in the second, "this fact, if you find it to be a fact," thus leaving to the jury the determination of the particular facts, besides charging them generally upon the duty of ascertaining each fact in issue.

It is also contended that the court erred in refusing to give at the request of the defendant the following instructions: 1. "To constitute murder in the first degree there must be some other proof of malice than the mere proof of killing, unless the killing was effected in the commission or attempt to commit a felony; and premeditation and deliberation when necessary to constitute murder in the first degree, and it is necessary, except the killing was effected in the commission or attempt to commit a felony, must be proven by poisoning, lying in wait, or some other proof that the design was formed and matured in cool blood, and not hastily upon the occasion, and if there is a reasonable doubt in your mind that the intent was so formed you cannot find murder in the first degree." 2. "If you find from the evidence that the accused acted in the shooting from fear of great bodily injury to himself, and not from premeditated design to kill, then you cannot find the defendant guilty of murder in any

degree." 3. "If you find from the evidence that the accused did the shooting in the belief that it was necessary to preserve his life, or to save himself from suffering great bodily harm from the deceased, and that he had reasonable grounds for such belief, then the accused is justified in the killing and you cannot find him guilty of any crime under the indictment." 4. "If you find from the evidence that the defendant bought a pistol a short time before the killing, and that the defendant had no trouble or quarrel with the deceased, the fact that defendant bought said pistol is no proof of malice." 5. "I instruct you that in this case the evidence is not sufficient to warrant a conviction of murder in the first degree." The tenth instruction given by the court is as follows: "The law provides that there shall be some other evidence of malice than the mere proof of killing to constitute murder in the first degree, unless the killing was effected in the commission or attempt to commit a felony. And deliberation and premeditation, when necessary to constitute murder in the. first degree, shall be evidenced by poisoning, lying in wait, or some other proof that the design was formed and matured in cool blood." It will be observed that this instruction differs from the first request, in that it omits the words, "and not hastily upon the occasion," but in the eighth instruction the court defined this clause by saying: "No particular time is necessary within which to form the design, but in order to constitute deliberation the design to do the act charged must exist in the mind of the party charged with its commission." The court in the second instruction defined a reasonable doubt, and, after referring to the defendant's plea, said: "By this plea of not guilty on the part of the defendant the burden is placed on the State of Oregon to prove

every material allegation in this indictment to your satisfaction, beyond a reasonable doubt."

In *State* v. *Morey,* 25 Or. 241, (35 Pac. 655, 36 Pac. 245,) it was held that an instruction similar to the eighth correctly interpreted the law. From the second, eighth, and tenth instructions above set out it clearly appears that the defendent's first request has been substantially complied with. A part of the twenty-seventh instruction is as follows: "And if you find any evidence to the effect that the deceased made any demonstrations toward the defendant, from which the defendant had reasonable grounds to believe, acting as a reasonable and prudent man, that his life was in imminent danger, or that he was in danger of great bodily harm at the hands of the deceased, then the defendant would be justified in defending himself, and if necessary would have the right to take the life of the deceased to preserve his own life, or to prevent great bodily harm to himself." This instruction substantially embraces the propositions of law contained in the second and third requests. The fourth request is fully covered by the thirty-first instruction given above.

10.   In considering the fifth request, it is sufficient to say that the record does not purport to contain all the evidence, and hence it must be presumed the court properly denied it. The bill of exceptions contains other alleged errors which we have examined, and having considered those presented by the defendant's brief and relied upon in the argument, we feel that he has had an impartial trial in the manner prescribed by law, and there being no error in the record the judgment is affirmed.        AFFIRMED.