## IN THE

# SUPREME COURT

## OF

# OREGON.

Decided at PENDLETON, July 20, 1895.

## MAXWELL v. BOLLES.

[41 Pac. 661.]

1. ERROR CURED BY SUBSEQUENT EVIDENCE.— Error in admitting evidence of the contents of an instrument without proof of its loss or destruction is cured by subsequent testimony showing the loss.

2. ADMISSION BY PLEADINGS — INCONSISTENT DEFENSES.— Where a defendant denies the execution or delivery of a note, and in a separate defense alleges that the same note was made with a fraudulent intent, the execution of the note is admitted, for the two statements are utterly inconsistent: *Veasey* v. *Humphreys*, 27 Or. 515, cited and approved.

3. CROSS-EXAMINATION.—The right of cross-examination is obviously an important one to an opponent, and the practice should be liberal with the purpose of eliciting all the facts in their true light. So, on an issue as to the consideration for a mortgage, the party attacking the instrument is clearly entitled to cross-examine the mortgagee on the facts and the circumstances surrounding its execution and delivery: *Ah Doon* v. *Smith* 25 Or. 89, and *Sayres* v. *Allen*, 25 Or. 215, approved and followed.

4. TIME WHEN ATTACHMENT LIEN ATTACHES TO CHATTELS.—A writ of attachment creates no lien on personal property until it is actually taken into the custody of the officer if it is capable of manual delivery; and when the property is in several parcels so as to require separate and distinct seizures, the lien as to each attaches only as of the time of its actual

seizure, and does not relate back to the time of the seizure of the first parcel.

APPEAL from Union: MORTON D. CLIFFORD, Judge.

This is an action by Isaac T. Maxwell against J. T. Bolles to recover possession of personal property. The complaint, in substance, alleges that on February twelfth, eighteen hundred and ninety-four, one J. Q. Shirley made, executed, and delivered to the plaintiff his promissory note for the sum of one thousand dollars, due one year after date, and, as security for the payment of the same, gave him a chattel mortgage on thirty-one head of horses, of the value of nine hundred and sixty dollars, which mortgage is conditioned that should the mortgaged property or any part thereof be "taken on attachment or execution, the whole of the principal and interest shall become due and collectible, at the option of the mortgagee or his assigns, and it shall be lawful for such person, his agents or assigns, to take immediate possession of said property, and to sell the same at public sale"; that said mortgage was duly and regularly filed in the office of the county clerk of Union County at nine o'clock a. m. of the twelfth day of February, eighteen hundred and ninety-four, and has ever since been and is still on file in said office; that thereafter, and on the thirteenth of February, the defendant, as sheriff, attached a portion of said mortgaged property under a writ of attachment issued in an action brought by Wright and Davis Brothers against Shirley, and ever since and now wrongfully and unlawfully withholds the possession thereof from the plaintiff; that by reason of said attachment plaintiff became and is entitled to the immediate possession of said property under the terms of his mortgage. The answer specifically denies, on in-

formation and belief, the material allegations of the complaint, and affirmatively avers that on February eleventh, eighteen hundred and ninety-four, there was placed in his hands for service two certain writs of attachment issued out of the Circuit Court for Union County, in actions therein pending, in which Wright and Davis Brothers were plaintiffs, and Shirley defendant, commanding and directing him to attach and take into his possession sufficient of the property of Shirley to satisfy the amount named in said writs; that afterwards, and on the twelfth day of February, eighteen hundred and ninety-four, and before the hour of nine o'clock a. m. of said day, under and by virtue of said writs, the defendant attached and took into his possession the personal property in controversy in this action, being the same at the time the property of Shirley and in his possession. And for a further defense he avers, on information and belief, that the promissory note and mortgage set out in the complaint were both voluntarily executed and delivered by Shirley to plaintiff without any consideration, and for the purpose of hindering, delaying, and defrauding the creditors of Shirley, and especially Wright and Davis Brothers, whose action was then pending, and that such note and mortgage were so received and accepted by plaintiff. The reply having put in issue the allegations of the answer, a trial was had, resulting in a verdict and judgment in favor of the plaintiff, and defendant appeals, assigning error in the ruling of the trial court in the admission of evidence and in its instruction to the jury.          REVERSED.

For appellant there was a brief and an oral argument by *Mr. Thos. H. Crawford.*

For respondent there was a brief by *Messrs. J. M. Carroll* and *Rand, Williams and Shinn,* and an oral argument by *Mr. Carroll* and *Mr. J. L. Rand.*

Opinion by MR. CHIEF JUSTICE BEAN.

1.  It is claimed that the court erred in allowing the plaintiff to testify as to the existence and contents of the alleged promissory note given him by Shirley without first proving its loss or destruction.  It is a rule of universal application that the existence and contents of a written instrument, when material and in issue, cannot be proved by parol without first showing that it is not within the power of the party offering such evidence to produce the writing itself.  The instrument sought to be proved is regarded necessarily as the primary or best evidence of its own existence and contents, and, if possible, must be produced. This is but an application of the rule that the best evidence of a disputed fact must be produced of which the nature of the case is susceptible: 1 Greenleaf on Evidence, §§ 82, 84; Rice on Evidence, § 146.  But in this case the bill of exceptions shows that the fact was elicited upon cross-examination that the note in question was not in possession of the plaintiff, but had been stolen from him two or three weeks before court convened; so that the error, if any, in admitting evidence of the contents of the writing without first proving its loss, was cured by the subsequent testimony of the defendant.

2.  And, besides, it may well be doubted whether the existence or contents of the note was really in issue in the case at all.  True, the defendant denied its execution or delivery upon information and belief, but in his answer he affirmatively admits the execu-

tion of both the note and mortgage, but alleges that they were made and received without consideration, and for the purpose of hindering, delaying, and defrauding the creditors of Shirley, and this admission probably rendered proof of their execution and delivery unnecessary: *Veasey* v. *Humphreys,* 27 Or. 515 (41 Pac. 8). From the pleadings it will be observed that the plaintiff claims title and right to the possession of the horses described in the complaint by virtue of a chattel mortgage thereon executed by Shirley on the twelfth day of February, eighteen hundred and ninety-four, which was filed for record at nine o'clock in the morning of said day; while the defendant claims that the writ of attachment under which he justifies was served by taking the property in question into his custody before the mortgage was filed, and that the note and mortgage were given and received for the purpose of hindering, delaying, and defrauding creditors, and especially the said Wright and Davis Brothers; the real questions presented, then, were, *first,* was the chattel mortgage filed before the attachment; and, *second,* if so, was the note and mortgage to plaintiff given and received in good faith to secure a *bona fide* debt?

3. The next error assigned relates to the refusal of the court to compel the plaintiff to answer certain questions on cross-examination. The bill of exceptions discloses that plaintiff testified on his direct examination that the note and mortgage were given for and to secure an indebtedness to him from Shirley for work and labor performed on Shirley's farms prior to February, twelfth, eighteen hundred and ninety-four. On cross-examination he was asked by defendant's counsel the following, among other questions: "Was it for work you done for him just before the note was given?" "For what particular length of time did you

work for Mr. Shirley, and what dates? and between what dates did you work for him for which the thousand-dollar note was given?" "What time in eighteen hundred and eighty-nine did you commence to work for him?" "What were you to receive a month for your work?" "How much did he pay you on your work between these dates over and above the thousand-dollar promissory note?" To each and all of these questions plaintiff by his counsel objected, whereupon the court sustained the objection and excused the witness from answering. One of the most important questions, if not the principal contested question, in the case, was whether there was any consideration for the note and mortgage under which plaintiff claims possession of the property; and, the plaintiff having testified in chief that it was work and labor performed by him for Shirley, it was clearly competent for the defendant on cross-examination to ask him when he commenced work, when he quit, what time he worked between those dates, what wages he was to receive, and how much he had been paid for his work over and above the amount covered by the note. These were all matters of legitimate cross-examination, and went to impeach the consideration of the very instrument under which plaintiff was claiming the right to the possession of the property in question. If the mortgage was without consideration, it was void as to the defendant, and plaintiff could not recover in the action. It was, therefore, of the utmost importance to the defendant that the right to cross-examine the plaintiff upon this matter should not be denied him. The cross-examination of a witness should always be allowed a free range, and it should not be limited to the exact facts stated in the direct examination, but may extend to other matters connected therewith

which tend to limit, explain, qualify, or rebut any in-
ference resulting from the direct examination: *Ah Doon
v. Smith,* 25 Or. 89 (34 Pac. 1093); *Sayres v. Allen,* 25 Or.
215 (35 Pac. 254.) The range and extent of the cross-
examination of witnesses is left to the discretion of the
trial court, and will be reviewed by an appellate court
only in case of an abuse of such discretion, but the
bill of exceptions here discloses that defendant was
not allowed to cross-examine the plaintiff at all upon
the consideration of the note and mortgage, the ob-
jections to the questions being that such evidence was
immaterial and irrelevant, and the court so ruled.
The right to cross-examine the witness was a valuable
legal right, of which the defendant could not be justly
deprived, and the denial of such right was clearly
error.

4. The next question is as to when the attachment
under which defendant justifies took effect. The evi-
dence in his behalf tended to show that on Saturday,
the tenth day of February, he received the writs of
attachment together with a list of the property to be
attached, but too late for service on that day. On the
following Monday morning, about seven o'clock, his
deputy, accompanied by the agent of Shirley who had
possession of the property, left Union to go to the
Stanton and Jones Ranches, some four or five miles
distant, where the horses were, for the purpose of at-
taching them. While on the way, and before reaching
the Stanton Ranch, they met parties driving some of
the horses to town, which they proceeded to attach
and list. They then went to the Stanton Ranch, and
attached and listed some more of the horses, and then
went to the Jones Ranch and completed the attach-
ment, getting through about noon, and returning to

Union about two o'clock in the afternoon. The evidence tended to show that a portion of the horses were attached prior to nine o'clock, the date at which the mortgage was filed, and it was admitted that some of them were not attached until after that time. The contention for the defendant is that, in contemplation of law, the attachment dated from the time the officer commenced to take the horses into his custody, and if that was prior to the filing of the mortgage, the attachment took precedence over it, although a part of the horses were not actually seized until after it was filed. But, as we understand the law, a writ of attachment creates no lien on personal property until it is actually taken into the custody of the officer, if it is capable of manual delivery and not in the possession of some third person; and when the property is so situated as to require separate and distinct seizures, the lien as to each attaches only at the time of its actual seizure and taking into custody by the officer: *Kuhn* v. *Graves,* 9 Iowa, 303; *Lott* v. *Roosevelt,* 9 Cowp. 526; *Burhans* v. *Tibbitts,* 7 How. Pr. 77. It is true it is sometimes said that in legal contemplation the law knows no fraction of a day, but common sense and common justice as well require that the exact time may be shown when it will promote substantial justice, and hence, when the statute says that from the date of the attachment the attaching creditor shall be deemed a purchaser in good faith, it simply means from the actual time that the property is attached, and not from the date of the writ or of the day on which the attachment is made. The mortgage of the plaintiff, if otherwise valid, was therefore a prior lien upon all the property therein described which had not been actually seized or attached by the sheriff at the time it was filed, and the defendant is entitled to the pos-

session of such of the horses, if any, as he may have actually attached prior to such filing. The judgment of the court below is reversed and a new trial ordered.

REVERSED.

Decided June 3; rehearing, July 22, 1895.