## STATE *v.* OLBERMAN.

[55 Pac. 866]

TRIAL—DISQUALIFICATION OF JURORS FOR BIAS.—The fact that proposed jurors stated on their *voir dire* that they had read an account of the inquest held over the body of the person for whose murder defendant was on trial, which purported to give the testimony of witnesses before the coroner's jury, and the verdict of such jury, and that they had heard the matter discussed, and, from what they had read and heard, had formed some opinion as to the guilt or innocence of defendant, will not disqualify them if it appears that the opinion was not of a fixed and determined character: *Kumli* v. *So. Pac. Co.*, 21 Or. 505, and *State* v. *Brown*, 28 Or. 147, cited.

ERROR MUST APPEAR IN THE RECORD.—Before the appellate court can undertake to correct an alleged error it must appear in the record that the error actually occurred.

TRIAL—MISCONDUCT OF JURY.—A conviction in a capital case will not be set aside because, after having been ordered kept together during the trial, three jurors, accompanied by a bailiff in charge of the jury, separated from the rest, and went into a saloon, in which there was only one person, and drank liquor, nothing being said by anyone concerning the case.

IDEM.—It will not be set aside because, at another time during the trial, two jurors separated from the others, and, accompanied by a bailiff, went to their respective residences, neither of them going out of sight of the bailiff, and immediately returning to the other jurors, without conversing about the case with anyone, or hearing any statement in reference thereto.

IDEM.—The fact that jurors drink intoxicating liquors during the trial will not invalidate a conviction even in a capital case, unless it appears that such drinking probably affected their verdict.

IDEM.—The mere fact that the direction of the court that the jury be kept together during the progress of the trial has been violated is not cause for reversal, if it appears that their verdict was not improperly influenced.

From Douglas : J. C. FULLERTON, Judge.

J. M. Olberman was dissatisfied with a conviction of murder in the first degree and appeals.

AFFIRMED.

For appellant there was a brief over the names of *O. P. Coshow*, *Andrew M. Crawford*, and *Cake & Cake*, with an oral argument by *Mr. Crawford* and *Mr. Harry M. Cake.*

For the state, there was a brief over the name of *Geo. M. Brown*, district attorney, with an oral argument by *Mr. Cicero M. Idleman*, attorney-general, and *Mr. Brown.*

MR. JUSTICE BEAN delivered the opinion.

This is an appeal from a judgment of the Circuit Court of Douglas County upon a conviction of the defendant of murder in the first degree. The record contains several assignments of error, but the principal ones relied upon at the hearing relate to the action of the trial court in overruling the defendant's challenge to the jurors Hadley and Curry for actual bias, and the alleged misconduct of the court and jury during the progress of the trial. We have, however, in view of the consequences of an affirmance, examined with care all the assignments of error, and are clear that the judgment must be affirmed. The jurors Hadley and Curry stated, during their examination on their *voir dire*, that they had read in the local newspaper an account of the inquest held over the body of the man for whose murder the defendant was on trial, which purported to give the testimony of the witnesses before the coroner's jury, and the verdict of such jury, and that they had also heard the matter of the homicide frequently discussed, and from what they had read and heard each had some opinion as to the guilt or innocence of the defendant. But it quite clearly appears from their examination that their opinion was not of such a fixed and determined character as to render the action of the trial court in overruling the challenge reversible error. It was held

in *Kumli* v. *Southern Pacific Co.*, 21 Or. 505 (28 Pac. 637) and *State* v. *Brown*, 28 Or. 147 (41 Pac. 1042), that the qualification of a juror, when challenged for actual bias, is largely a question for the trial court, and that its decision will not be disturbed on appeal unless the want thereof clearly appears from the record; but there is nothing in this record to indicate that Hadley and Curry had formed such an opinion that they could not in law be deemed impartial. It does not appear who testified before the coroner's jury, nor what testimony was given, so that it cannot be said from the record that the knowledge which these jurors received from reading the account of the proceedings before the coroner was such, as a matter of law, as would disqualify them from sitting on the jury.

It is next claimed that, during the progress of the trial, and while the closing argument for the state was being made, the judge retired from the court room, and the trial proceeded in his absence. If the record disclosed that the alleged facts upon which this objection is based were true, we should not hesitate to reverse the judgment, for it is clear that there can be no court without the presence of the judge, and it is particularly important that he should be visibly present, and control the entire proceedings, during the progress of a trial in which the defendant's life is at stake: 1 Thompson, Trials, § 212; *Smith* v. *Sherwood*, 95 Wis. 558 (70 N. W. 682); *Hayes* v. *State*, 58 Ga. 35; *State* v. *Beuerman* (Kan. Sup.) 53 Pac. 874. But the record does not show the facts upon which the objection is predicated. There is no recital or statement whatever in the bill of exceptions upon this point. It is true that there is copied into the bill what would seem to have been a motion for a new trial, based upon the irregularity of the court, prosecuting officer, and jury, and certain affidavits which were prob-

ably used on the hearing thereof ; but they are in no way identified, nor is there any certificate or statement that they are the motion and affidavits so used.  And, besides, the affidavits in reference to the conduct of the judge are contradictory, leaving the question of fact wholly undetermined.  There is no finding of the court thereon, and, if any inference is to be drawn from its action in overruling the motion, it is that the charge is untrue. Error cannot be presumed.  In order, therefore, to entitle the defendant to have the judgment reversed upon the point suggested, it should affirmatively appear that the judge in fact absented himself from the court room during the progress of the trial, and there is no such finding or statement in this record.

The same might with propriety be said with reference to the alleged misconduct of the jury.  There have been copied into the bill what purport to be divers and sundry affidavits in relation to this matter, but they are in no way identified, and there is no statement that they are the affidavits used on the motion to set aside the verdict, nor does it even appear that they were ever filed in the court, or used at the hearing of any matter connected with the trial of the cause now before us.  But, in view of the importance of this case, we are disposed to waive this point, and to assume that the question sought to be presented is properly here.  The most that can be claimed from the showing made is that, after the jury had been impaneled and sworn, the court ordered them into the custody of two bailiffs, with instructions to keep them together during the progress of the trial ; that one morning, before the final submission of the case, three of the jurors, by the consent and accompanied by one of the bailiffs, went into a saloon, and, after taking one drink of liquor each, immediately returned to their fellow jurors ; that the only person in the saloon at the time

was the proprietor, and nothing was said by any one concerning the case on trial; that at other times two of the jurors, accompanied by one of the bailiffs, were permitted to go to their respective residences, a short distance from the court house, on an errand, immediately returning to the other jurors; that neither of these jurors was out of the sight or hearing of the bailiff, nor did they converse with any one about the case on trial, or hear any conversation or statement in reference thereto.

Now, these facts do not constitute such misconduct of the jury as justify disturbing their verdict. The mere fact that the direction of the court to keep them together during the progress of the trial was violated, does not give the defendant the right to have their verdict set aside, when, as in this case, it appears that there was nothing in their conduct, nor any circumstances connected therewith, calculated to improperly influence their verdict. It was discretionary with the trial court, in the first instance, as to whether they should be allowed to separate or not (*State* v. *Shaffer*, 23 Or. 557, 32 Pac. 545), and its direction to keep them together was for the purpose of warding off improper influences; but the failure to comply with such order does not give to the defendant the right to any exception for error or misconduct, when it appears that the verdict was not improperly influenced thereby. Nor does the mere drinking of intoxicating liquors by jurors invalidate a conviction, even in a capital case, unless it appears that such drinking in some way probably affected their verdict: Kerr, Hom. § 377; 2 Thompson, Trials, § 2569; *State* v. *Cucuel*, 31 N. J. Law, 249; *People* v. *Bemmerly*, 98 Cal. 299 (33 Pac. 263). Whether the officers and jurors should have been punished for contempt in violating the orders of the trial court was a question for that court, but their conduct in this regard is not sufficient ground alone for disturbing

the verdict.   We conclude, therefore, that the judgment
of the court below must be affirmed, and it is so ordered.

AFFIRMED.