Argued 31 January; decided 2 April; rehearing denied 13 August, 1900.

## STATE *v.* SAVAGE.

[ 60 Pac. 610.]

1. INDICTMENT—LARCENY FROM AN OFFICE—INCLUDED OFFENSE.—Under Section 1763, Hill's Ann. Laws, there is a crime of larceny, or, as it was called at common law, simple larceny, the punishment for which is determined by the value of the property taken, but there are no such crimes in Oregon as "petit larceny" or "grand larceny." There is also another crime, known as larceny in a building, defined by Section 1764, Hill's Ann. Laws, the grade of which is entirely independent of the value of the articles stolen. It, then, necessarily follows that under an indictment for larceny in a building the defendant may be convicted of simple larceny, for some larceny is absolutely essential to larceny in a building. An allegation of value is immaterial and surplusage in an indictment for larceny from a building, but if the jury should convict of larceny only, the finding of value would affect the penalty inflicted: *State* v. *Hanlon*, 32 Or. 95, cited and applied.

2. TRIAL—CHANGING VENUE—CONTENTS OF AFFIDAVIT.—An application for a change of venue, under Section 1222, Hill's Ann. Laws, because of local prejudice, is addressed to the discretion of the trial court, and it does not appear that the court acted unwisely in this instance: *State* v. *Pomeroy*, 30 Or. 16, followed. In such cases it is better practice to set forth in the affidavits that the motion is not made for delay, though that may be inferred from the context: *Packwood* v. *State*, 24 Or. 261, cited.

| | |
|---|---|
| 36 | 191 |
| 37 | 556 |
| 36 | 191 |
| 43 | 49 |
| 43 | 56 |
| 43 | 212 |
| 43 | 216 |
| 36 | 191 |
| 46 | 25 |
| 46 | 489 |
| 36 | 191 |
| 48 | 174 |

3. CHALLENGE TO JURY PANEL.—Under Hill's Ann. Laws, ₴ 181, abolishing challenges to the panel, it is not error, in a criminal case, for the court to refuse to quash the array.

4. APPOINTING ELISORS—TRIAL—DISCRETION OF COURT.—Where objection is made to allowing the sheriff to summon talesmen for a jury, on the ground that he is interested and prejudiced, which is denied, the action of the court is discretionary, and in this case such discretion was not abused.

5. TRIAL—COMPETENCY OF JUROR—DISCRETION.—A juryman in a criminal case who stated that he had read an account of the preliminary examination, had heard the cause discussed, and had an opinion which it would take evidence to remove, and did not think that he would make an impartial juryman, but that he would have no trouble in setting aside the newspaper report, and, if accepted, would base his decision entirely upon the evidence given at the trial, is qualified to serve, under Hill's Ann. Laws, ₴ 187, providing that the mere expression of an opinion based on what a juryman had heard or read is not a disqualification, but the court must be satisfied from all the circumstances that the juror cannot disregard such opinion.            ·.

6. EVIDENCE OF INTENT TO COMMIT THE CRIME CHARGED.—It is not error to permit a witness for the state in a prosecution for larceny from an express office to testify that, prior to the commission of that crime, defendant and his co-defendant had proposed to him that they rob a train, but that nothing was said about it being an express train, when it was shown by other witnesses that such train was an express train, and that defendant and his co-defendant had intended to rob the express company at that time.            ·            · ′

7. CROSS-EXAMINATION.—Where a witness testified in chief that he had found money on the premises of the co-defendant, but nothing was said about how he happened to be searching on such premises, he cannot be asked on cross-examination to explain why he made such search, as such question is not connected with his testimony in chief: *Oregon Pottery Co.* v. *Kern*, 30 Or. 328, distinguished.

8. PROPER LIMITS OF CROSS-EXAMINATION.—A cross-examination that does not explain or fill out matters referred to in the direct examination must reasonably tend to determine the accuracy, veracity or credibility of the witness, otherwise it should not be permitted.

9. VARIANCE—NAME OF OWNER OF STOLEN PROPERTY.—Where an indictment charges larceny from the "Pacific Express Company, a corporation incorporated under the laws of Nebraska," and the proofs show that the name of the company was "The Pacific Express Company," and that it was a Nebraska corporation, there is not a fatal variance between the indictment and proof.

10. INDICTMENT—LARCENY FROM A CORPORATION.—An indictment for stealing property of a corporation is sufficient on the point of ownership if it alleges correctly the name of the corporate body, and that it owned or was in possession of the stolen property,—an allegation of the place or law of the incorporation is surplusage.

11. EVIDENCE OF EXISTENCE OF A FOREIGN CORPORATION.—On a question whether an alleged corporation was a *de facto* corporation, an apparently official compilation of the laws of the state in which such corporation is claimed to have been organized, and a properly certified copy of articles of incorporation of the company, with evidence of the actual exercise of corporate powers, are all competent evidence, and are sufficient *prima facie* to show the incorporation.

12. INSTRUCTIONS MUST BE CONSIDERED TOGETHER.—The giving of instructions in a criminal case which are not full enough, and the refusal to give other instructions, are not error, when the instructions as a whole include a sufficient statement of the law applicable to the case: *State* v. *Bartmess*, 33 Or. 110, approved.

13. CO-DEFENDANT AS WITNESS.—Where a co-defendant has entered a plea of guilty to a joint indictment, he is a competent witness for the state on the trial of his co-defendant: *State* v. *Magone*, 32 Or. 206, followed.

14. FORM OF SPECIAL VERDICT.—A verdict that a jury finds the defendant guilty of larceny only, and assesses the value of the property stolen is a valid special verdict, under Hill's Ann. Laws, § 1379, defining a special verdict as one by which a jury finds the facts sufficient, and leaves the judgment to the court.

15. HARMLESS ERROR—EVIDENCE SUBSEQUENTLY RECEIVED.—Error in excluding competent testimony is harmless where the same witness subsequently gives the same information.

From Wasco : W. L. BRADSHAW, Judge.

The defendant Otis Savage was jointly indicted with Frank Klein for the crime of larceny. The indictment charged that said Otis Savage and Frank Klein on the thirteenth day of October, 1894, in the County of Wasco and State of Oregon, in a certain office in Dalles City, in said county, then and there occupied by the Pacific Express Company, a corporation incorporated under the laws of the State of Nebraska, and then and there lawfully doing business in said city, county, and state as an express company, and engaged in the express business in said state (the same being the express office of said company), unlawfully and feloniously did take, steal, and carry away $14,000, current gold and silver coin of the United States, of the value of $14,000 lawful money of the United States, and then and there the money and property of said Pacific Express Company (the denomination of said money being to the grand jury unknown), contrary, etc.  A demurrer to the indictment on the ground, *inter alia*, that it charged more than one offense, having been overruled, a plea of not guilty was entered, and, a separate trial being had, the following verdict was returned : "We, the jury in the above entitled cause, im-

36 OR.—13.

paneled to try the defendant Otis Savage only, find said
Otis Savage guilty of larceny only, and assess the value
of the coin stolen at $14,000." Whereupon the defendant
was sentenced to imprisonment in the penitentiary for the
term of four years, from which judgment he appeals.

AFFIRMED.

For appellant there a brief over the names of *Alfred S.
Bennett* and *Huntington & Wilson*, with an oral argument
by *Mr. Bennett* and *Mr. H. W. Wilson*.

For the state there was a brief over the names of *Zera
Snow* and *D. R. N. Blackburn*, Attorney-General, with an
oral argument by *Mr. Blackburn*.

MR. JUSTICE MOORE, after stating the facts, delivered
the opinion of the court.

1. It is contended by defendant's counsel that the in-
dictment charges grand larceny and larceny from a build-
ing, and that the court erred in overruling the demurrer
to the duplicity. The statute (Hill's Ann. Laws, § 1273),
in prescribing the manner of stating the facts constitut-
ing an offense, provides that the indictment must charge
but one crime, and in one form only ; and (section 1383),
that in all cases the defendant may be found guilty of any
crime the commission of which is necessarily included in
that with which he is charged in the indictment. The
statutes which it is claimed the indictment charges a vio-
lation of, as far as applicable herein, are as follows :
Section 763. "If any person shall steal any goods or
chattels  *  *  *  the property of another, such person
shall be deemed guilty of larceny, and, upon conviction
thereof, if the property stolen shall exceed in value thirty-
five dollars, shall be punished by imprisonment in the
penitentiary not less than one nor more than ten years ;"

and section 1764: "If any person shall commit the crime of larceny in any  *  *  *  office  *  *  *  such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than seven years." It is argued that larceny in an office always comprises petit larceny, under the assumption that the property taken is of some value, but that larceny in such building does not necessarily include the taking of goods or chattels, the value of which would render the offense grand larceny, and that the defendant, having been charged in the indictment with the crime of larceny in an office, could not be found guilty of grand larceny. Larceny at common law was classed as simple larceny, and larceny accompanied with violence or putting in fear, which was denominated "robbery." Simple larceny was subdivided into grand larceny, which consisted in the felonious taking of goods above the value of twelvepence, and petit larceny, in which the value of the property so taken was twelvepence or under : 1 Hale, P. C. 503. Simple larceny was unaccompanied with any atrocious circumstance, while mixed or compound larceny included the aggravation of a taking from one's house or person : 4 Bl. Com. 229. According to this classification, larceny in an office is plain theft, aggravated by the circumstance of the place in which the personal property feloniously taken is kept or stored, and necessarily includes simple larceny; and, as simple larceny embraces within its subdivisions grand larceny, it would seem to follow, notwithstanding a conflict in the decisions (*Stone* v. *State,* 115 Ala. 121, 22 South. 275) that, in those states in which grand and petit larceny are designated as different degrees of the same offense, larceny in an office, when the value of the property so taken brings the crime within the higher grade, necessarily includes grand larceny.

But, however this may be, the legislative assembly of

this state has never subdivided simple larceny, or by any act denominated such crimes as grand or petit larceny. The statute, section 1763, in prescribing the mode of punishment, provides that, if the property stolen shall exceed in value $35, the party convicted thereof shall be punished by imprisonment in the penitentiary not less than one nor more than ten years, but, if the property feloniously taken shall not exceed the value of $35, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than one year, or by fine not less than $25 nor more than $100. Under section 1764, larceny of goods in a building renders the person convicted thereof subject to punishment by imprisonment in the penitentiary not less than one nor more than seven years, regardless of the value of the property feloniously taken. It will thus be seen that the grade of the offense is not measured by such value, nor by the penalty imposed for a violation of the property rights of another, but is determined by the circumstances which aggravate the taking. In an indictment for larceny in an office the value of the property stolen is, therefore, immaterial, but when such value is alleged the party accused of the crime is thereby notified in this respect. In *State* v. *Hanlon*, 32 Or. 95 (48 Pac. 353), it was held that, under an indictment charging larceny from a shop, a defendant might be convicted of simple larceny, if the indictment alleged the value of the personal property taken. See, also, *Fanning* v. *State*, 12 Lea, 651. The indictment herein having charged larceny in an office, the specification necessarily included simple larceny; and, the value of the property stolen having been averred, no error was committed in overruling the demurrer.

2. The defendant, in support of a motion for a change of venue, filed an affidavit in which he stated, in effect,

that immediately after the alleged larceny of the money mentioned in the indictment the Pacific Express Company offered, by public advertisement, a reward of ten per cent. of the amount recovered, and the sum of $250, for the conviction of each person implicated in the alleged theft; that T. J. Driver, Sheriff of Wasco County, received or claims to be entitled to the sum of $1,400 for recovering $14,000 from the possession of the defendant Frank Klein, and that he expects to secure $250 additional in the event of defendant's conviction; that Driver is very bitter and vindictive against defendant, having frequently expressed the opinion that he was guilty of the offense charged, and, as deponent verily believes, will use every means within his power, lawful or otherwise, to secure such conviction; that Driver, by reason of his prejudice, interest, and activity, is disqualified to serve any process in the action, and that the officers associated with him as deputies are also disqualified for the same reason; that this cause has been much talked about, as deponent verily believes and is credibly informed, throughout said county, and great difficulty will be encountered in securing qualified jurors; and that a fair and impartial trial cannot be had in said county. T. J. Driver filed a counter affidavit, in which he denied that he received or claimed that he was entitled to the sum of $1,400 as a reward, and further stated that he had been paid by the Pacific Express Company all the reward he asked, and did not expect to receive $250, or any part thereof, in the event that defendant was convicted; that he was not bitter or vindictive against the defendant, and any opinion he may have expressed as to his guilt was founded upon the facts which came to his knowledge, and not from any feeling against him; that he was not disqualified from selecting a fair and impartial jury in said cause, and had no desire to see the defendant tried by a partial

or prejudiced jury, but, if it should be his duty to summon jurors in said cause, he would select them conscientiously, and endeavor to secure fair and impartial men, who had formed no opinions in said matter; that his deputies were also fair and impartial, and would have no reason to select or summon any other than fair and impartial jurors to try said cause; and that he believed a fair jury could be secured in said cause without great delay or unusual expense. The affidavits of others in support of and opposed to the change of venue having been filed, the motion was overruled, and it is contended that the court erred in this respect. The statute provides that in an action for a felony, when the cause is at issue upon a question of fact, the court may order the place of trial to be changed when it appears by affidavit, to the satisfaction of the court, that a fair and impartial trial cannot be had in the county where the action is commenced, and that the motion is not made for delay: Hill's Ann. Laws, § 1222. The affidavits filed in support of the motion do not state that the application for a change of venue is not made for delay; but that fact may appear therefrom without a positive statement to that effect: *Packwood* v. *State*, 24 Or. 261 (33 Pac. 674). Giving to the affidavits in support of the motion such liberal construction, we are confronted with the principle that an application for a change of the place of trial is addressed to the sound discretion of the trial court, and that its action in granting or denying the motion therefor will not be reviewed on appeal except in case of an abuse of such discretion, to the substantial injury of the accused: *State* v. *Pomeroy*, 30 Or. 16 (46 Pac. 797). An examination of the bill of exceptions fails to convince us that there has been any abuse of such discretion.

3. The regular panel having been exhausted, and only six jurors secured, defendant's counsel, based upon the

affidavits filed in support of the motion for a change of
venue, protested against the selection of a special venire
by T. J. Driver, the then sheriff of the said Wasco
County, on the ground that he was interested in the re-
sult of the trial, and that his prejudice precluded his
selecting impartial persons to serve as jurors, and moved
the court to appoint some qualified person to choose said
jurors ; but, the protest having been disregarded and the
motion overruled, a special venire was issued, in pursu-
ance of which the said sheriff selected from the body of
the county talesmen necessary to complete the jury,
whereupon defendant's counsel moved the court to set
aside the array, but the motion was overruled.  It is
urged that the sheriff, though not a party to the action,
was interested in the result thereof, and hence the court
erred in not appointing some qualified person in his stead
to select the talesmen, and also erred in refusing to set
aside the array, a part of which had been thus selected.
At the common law, when a sheriff was interested in
the result of a suit, the court dispensed with his services
in summoning talesmen for a special jury, and committed
that duty to the coroner ; and, if a special jury were
selected by a sheriff who was thus interested, the array,
upon challenge, was quashed :  Murfree, Sher. § 388 ; 1
Thompson, Trials, § 32.  A challenge to the panel hav-
ing been abolished in this state, no error was committed
by the court in refusing to quash the array :  Hill's Ann.
Laws, § 181.

4.   The statute provides, however, that, whenever the
regular panel becomes exhausted for any reason, the court
may, in its discretion, direct the sheriff to summon forth-
with from the body of the county persons whose names
are upon the tax roll, and having the qualifications of
jurors, to serve in a cause then pending :  Hill's Ann.
Laws, §§ 180, 968, as amended by the act of February 21,

1893 (Laws, 1893, p. 84). The coroner has power, and it is his duty, to execute any process in any action when the sheriff is a party: Hill's Ann. Laws, §§ 1027, 1028. And process in any action may be executed by an elisor when the sheriff and coroner are parties, when either of said officers is a party and the process is against the other, or when the offices of sheriff and coroner are vacant: Hill's Ann. Laws, § 1058. It is argued by counsel for the state that these statutory provisions impose upon the sheriff of a county the duty of selecting talesmen, and, under the maxim that the expression of one is the exclusion of the other, the court is without authority to appoint an elisor, except in certain contingencies, none of which existed in the case at bar. In response to such contention, defendant's counsel cite the U. S. Constitution, Article VI, which guaranties to the accused the right to a public and speedy trial by an impartial jury, and Const. Or. Article I, § 11, which provides that "in all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed," and argue that the right thus guarantied might be violated or rendered of little avail if the persons by whom the accused was tried were selected by a sheriff who was interested in any manner in the result of the action, and, while our statute provides for the appointment of an elisor upon the existence of certain conditions, such contingencies, upon principle, cannot be exclusive, and the court must of necessity possess inherent power to correct such an abuse; that, when jurisdiction is by the organic law of the state conferred on a court, all the means to carry it into effect are also given, and, in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by the code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit

thereof (Hill's Ann. Laws, § 940),—and cite *Aiken* v.
*Aiken*, 12 Or. 203 (6 Pac. 682), wherein it is held, in con-
struing this section, that under our system of jurispru-
dence all the common-law remedies are preserved in some
form, and, when a course of proceeding is not specially
pointed out, any suitable process may be adopted, con-
formable to the spirit of the code, and further argue there-
from that, the legislative assembly not having made pro-
vision for the appointment of an elisor in case of the
disqualification of a sheriff to select talesmen, by reason
of his interest in the result of the action, the procedure
guarantied by the organic law of the state is not specifi-
cally pointed out by statute, and, this being so, it must
be the duty of the court, in the interest of common jus-
tice, when the necessities of the case demand it, to ap-
point some suitable person to select a special jury, in
order that the accused may have an impartial trial.

Assuming, without deciding, that the authority of the
court to appoint such person is clear, and that the obli-
gation to do so is imperative, was such power evaded or
duty violated in the present instance? The solution of
this problem must depend upon whether the sheriff was
interested in the result of the action. The mere expres-
sion of an opinion, from the facts before him, as to the
defendant's guilt, did not necessarily render him inter-
ested in the result of the action, or disqualify him from
selecting talesmen : *People* v. *Shuler*, 28 Cal. 490. In
*Friery* v. *People*, 2 Abb. Dec. 215, a jury having been im-
paneled, the accused submitted a challenge to the array,
the first ground of which was that the sheriff or summon-
ing officer had formed or expressed an opinion as to the
guilt or innocence of the prisoner. Mr. Justice WRIGHT,
in commenting upon this question, says : "Plainly, the
first ground of challenge was without substance. The
idea that the mere expression of an opinion by the officer

designated by law to summon jurors, as to the merits of a case that may chance to be on the calendar of a court for trial, or in respect to the guilt or innocence of a party under indictment, is matter for challenge to the array, is as absurd as it is novel." The sheriff is the chief executive officer and conservator of the peace of the county : Hill's Ann. Laws, § 999. It is thus incumbent upon him, within the boundaries of his county, to render to the prosecuting officers all the assistance reasonably in his power to suppress crime and to punish criminals ; and, if he entertains the opinion that a person suspected or charged with the commission of an offense is really guilty, his conscience furnishes a justification for the effort he puts forth in the performance of his duty. The sheriff says he received, as a reward, all the compensation he demanded or expected for securing the money feloniously taken, and denies that he was to receive, or that he expected to secure, any sum whatever in the event of the defendant's conviction. The sheriff's interest in the result of the action was thus in issue, and the court, by overruling the motion to appoint an elisor, in effect determined the question in his favor. The evidence upon this issue is made a part of the transcript, an examination of which, in the light of the decision thereon, fails to convince us that any error was committed in allowing the sheriff to select the talesmen.

5. John Adams, having been selected as a juror by Sheriff Driver upon a special venire, said upon his *voir dire* examination that he had read in the Daily Chronicle an account of the defendant's preliminary examination, had heard the matter very freely discussed, and had talked about the case ; that as to the guilt or innocence of the defendant he had a pretty well settled opinion, which it would require evidence to remove ; and in answer to the question, "You feel that you would not be a fair and im-

partial juror?" he said, "No; I do not think I would."
On cross-examination, however, he said he did not think
that the paper purported to publish the questions pro-
pounded to the witnesses, nor the answers which they
gave; that such newspaper report could not be taken or
relied upon at the trial as sworn testimony, against which
it would have no weight; that, if accepted as a juror, he
would base his verdict entirely upon the testimony given
at the trial; and in answer to the question, "Would you
have any trouble in laying the newspaper report aside,
and basing your verdict on the sworn testimony?" he said,
"No." The court, having overruled the challenge for
cause, accepted the juror, and the defendant excepted.
Our statute provides that on a trial of a challenge for bias,
if it should appear that the juror challenged has formed
or expressed an opinion upon the merits of the case, from
what he has heard or read, such opinion is not sufficient
to sustain the challenge, but the court must be satisfied
from all the circumstances that the juror cannot disregard
such opinion and try the issue impartially: Hill's Ann.
Laws, § 187. In the trial of a challenge for actual bias,
the court below, having heard the testimony of the juror,
and noted his manner and bearing while under examina-
tion, is much better able to judge of his power to disre-
gard any opinion he may have formed or expressed from
what he has read or heard than is an appellate court from
an inspection of the transcript containing the questions
propounded and the answers thereto. It may be that, not
desiring to serve as a juror, he will, as far as possible,
seek to magnify his preconceived opinion, hoping thereby
to escape the duty which the law enjoins upon him; but
having said that he can lay aside such opinion and try the
issue impartially, and the court being vested with discre-
tion in such cases, its decision will not be reviewed, ex-
cept for a manifest abuse thereof: *State* v. *Saunders*, 14

Or. 300 (12 Pac. 441); *Kumli* v. *Southern Pac. Co.* 21 Or. 505 (28 Pac. 637) :   *State* v. *Brown,* 28 Or. 147 (41 Pac. 1042);   *State* v. *Kelly,* 28 Or. 225 (52 Am. St. Rep. 777, 42 Pac. 217);   *State* v. *Steeves,* 29 Or. 85 (43 Pac. 947); *State* v. *Olberman,* 33 Or. 556 (55 Pac. 866).   Not being able to discover any abuse of such discretion, the action of the trial court in accepting said juror will not be disturbed.

6.   J. W. Jackson, having been called as a witness for the state, was permitted to testify, over defendant's objection and exception, that at The Dalles, Oregon, some time in the spring of 1894, the defendant and Frank Klein tried to persuade him to go with them to a place below The Dalles, called "Hog Canyon," to hold up a passenger train which was expected to arrive from Portland at about 11 or 12 o'clock that night, but he refused to join in the enterprise. This witness, on being interrogated respecting the character of the train he was invited to intercept, was asked if it was an express train, to which he replied : "No, sir ;  they never said anything to me about holding up an express train."  It is maintained that the invitation to participate in an unlawful undertaking, so imputed to the defendant, having been made four or five months prior to the larceny charged in the indictment, and not having related to the robbery of the Pacific Express Company, from which the money is alleged to have been stolen, the testimony so received was of a collateral fact not connected in any manner with the crime with which the defendant is charged, and tended to prejudice him before the jury, and hence the court erred in its admission.   The rule is well settled that evidence of collateral facts tending to show that a person charged with a crime has committed independent offenses of like character is generally inadmissible :   Wharton, Cr. Ev. (9 ed.) § 30.   Thus, upon a trial of an indictment for assault with intent to

kill, evidence showing the commission by the prisoner of another similar assault at a different time and place, and upon a different person, is not competent: *People* v. *Gibbs*, 93 N. Y. 470. So, too, in a trial on an indictment for riot, evidence of participation in riotous assemblages in previous years is not admissible: *State* v. *Renton*, 15 N. H. 169. In a trial upon an indictment for larceny, testimony of a theft other than the one charged, and committed shortly before, is not admissible: *People* v. *Tucker*, 104 Cal. 440 (38 Pac. 195). "From the nature and prejudicial character of such evidence," says Mr. Justice AGNEW, in *Shaffner* v. *Commonwealth*, 72 Pa. St. 61 (13 Am. Rep. 649), "it is obvious it should not be received unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner." The testimony of all the witnesses concerning a material fact should be considered in its entirety, and not by an inspection of its integral parts. If it were not for this rule, which permits the proof of circumstances tending to establish the material fact in issue, Jackson's testimony would seem to be inadmissible, because he does not connect the defendant's alleged invitation to participate in the unlawful enterprise with the robbery of the Pacific Express Company.

If the jury believed the testimony of this witness, they might have reasonably inferred, from a consideration of other testimony hereinafter adverted to, that the robbery of the Pacific Express Company was contemplated by the defendant when he invited Jackson to go to Hog Canyon to hold up a passenger train. H. Beckwith, a witness for the state, testified that for seven or eight years prior to the larceny charged in the indictment the Pacific Express Company was the only company engaged in the express business on the railroad of the Oregon Railway & Navigation Company between Portland and The Dalles,

and that express matter was carried on passenger trains in the baggage car. Frank Klein, the co-defendant, having pleaded guilty to the indictment, appeared as a witwitness for the state, and testified that he and Savage talked about holding up the train and robbing the express ; that they planned to send two men to Mosier, a railroad station about twelve miles west of The Dalles, who were to get on the blind baggage, and to station two men at Hog Canyon, who were to stop and rob the train at the latter place ; and that they had talked with the witness Jackson about such scheme. Klein's testimony is corroborated by that of Walter Rowe, who says that it was agreed between them to rob the express car at Hog Canyon. John Hawthorn, a witness called by the state, testified that in May, 1894, Klein and Savage told him there was money coming at that time on the train, and proposed that they hold it up at Hog Canyon. This testimony, if it is to be believed, conclusively shows that Savage and his confederate had conceived the idea of robbing the Pacific Express Company, and that in pursuance of such intention they adopted plans to put it into execution, one of which was the robbery of the express car at Hog Canyon ; and, having invited Jackson to join them, his testimony, in connection with the foregoing, was material ; and the ground having been first laid, implicating the defendant in the commission of the crime with which he was charged, and evidence introduced tending to show that he harbored an intent to rob an express car of the Pacific Express Company, a system was thus established connecting such intent and the alleged larceny, thereby rendering Jackson's testimony admissible for the purpose of proving defendant's intent, and not to show his character or to establish a substantive and independent crime : Wharton, Cr. Ev. §§ 32, 48 ; *Strong* v. *State,* 86 Ind. 208 (44 Am. Rep. 292) ; *Mayer* v. *People,*

80 N. Y. 364; *Shipply* v. *People*, 86 N. Y. 375 (40 Am.
Rep. 551); *Pinckord* v. *State*, 13 Tex. App. 468; *Shaff-
ner* v. *Commonwealth*, 72 Pa. St. 61 (13 Am. Rep. 649).
Notwithstanding the trial court, in admitting evidence of
other inculpatory acts, may be clearly satisfied that proof
of one criminal act necessarily connects the defendant
with, and affords evidence of his commission of, another
crime, it is the province of the jury to reach conclusions
from facts in evidence, and, this being so, it is the duty
of the court, upon being so requested, to instruct the jury
that evidence of collateral facts tending to show the ex-
istence of a system is admitted for the sole purpose of
establishing the question of intent to commit the partic-
ular act constituting the crime for which the defendant
is being tried : *Commonwealth* v. *Shepard*, 1 Allen, 575 ;
*Commonwealth* v. *Vaughan*, 9 Cush. 594.    No instruction,
however, was given or requested on this branch of the
case, and hence the action of the court in respect thereto
cannot be assigned as error : *Page* v. *Finley*, 8 Or. 45.

7.   Samuel Simmons, being called as a witness for the
state, testified that he and H. Beckwith found in Samuel
Klein's yard a sack containing $4,800 in gold; that he
found another sack in a cesspool under a house occupied
by Chinese, containing $7,500 in gold ; and that Driver,
in his presence, dug up two sacks of silver containing
$498 and $1,000, respectively.   Upon cross-examination
this witness was asked the following question in relation
to searching the premises of Samuel Klein : "Had you
not been up there to search for this money before you
got any directions as to its whereabouts from Klein?"
An objection having been interposed on the ground that
it was not proper cross-examination, counsel for defend-
ant made the following statement : "We expect to show
by the cross-examination of this witness that he did not
go up to search for this money at the time he states,

totally, if at all, by the direction of Klein, or any persons, or any information got from him, but that he had been up there one or more times, searching upon the premises, upon other information, and that he had other information leading him to go up there and make the search, entirely independent of anything that Klein had told him.'' The objection having been sustained, an exception was allowed. Upon further cross-examination defendant's counsel propounded the following question to the witness : ''Were you not up to Klein's place to search for this money before young Klein had told you anything about its whereabouts, and did you not see Sam Klein there at that time, and in making search for the money, and while you were making search for it in the yard, didn't Sam Klein stand immediately over where you found the money, and try to induce you to take up the walk and search under the walk, and was it not from that circumstance that you finally discovered the whereabouts of the money?'' An objection having been sustained to this question on the ground that it was not proper cross-examination, an exception was allowed. The statute permits an adverse party to cross-examine a witness as to any matter stated in his direct examination or connected therewith ; but, if he examine him as to other matters, such examination is subject to the same rules as a direct examination : Hill's Ann. Laws, § 837. Defendant's counsel, taking advantage of the latter clause of this section, called Simmons as a witness for the defense, who, on direct examination, testified that prior to finding the money he had been at Klein's searching for it. This witness, on his direct examination for the state, made no statement tending to show by whose direction he went to the premises of Samuel Klein to search for the money, notwithstanding which it is argued that a witness on cross-examination may be asked any question

that tends to test his accuracy, veracity, or credibility, under which rule answers to the questions propounded to the witness were permissible. In *Ah Doon* v. *Smith,* 25 Or. 89 (34 Pac. 1093), in construing Section 837, Hill's Ann. Laws, it was held that, within the rule there prescribed, the cross-examination should be liberal, and properly extended to other matters that tend to limit, explain, or modify the facts stated on direct examination, provided they were directly connected therewith. To the same effect, see *Sayres* v. *Allen,* 25 Or. 211 (35 Pac. 254); *Maxwell* v. *Bolles,* 28 Or. 1 (41 Pac. 661); *Kenny* v. *Walker,* 29 Or. 41 (44 Pac. 501); *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917). Applying this liberal rule to the testimony given by Simmons the questions propounded to him on cross-examination did not relate to, nor were they in any manner connected with, the testimony given on his direct examination.

8. And, further, no error was committed in sustaining objections to such questions, unless they tended to test the accuracy, veracity, and credibility of the witness, and were admissible for that purpose. The rule is well settled in this state that if a witness in his direct examination is not permitted to answer a question, and the answer desired is not apparent from the form of the interrogatory, such question, supplemented by a statement of the testimony reasonably expected in response thereto, must be incorporated in the bill of exceptions, to render the action of the court available in sustaining an objection thereto: *Kelley* v. *Highfield,* 15 Or. 277 (14 Pac. 744); *Tucker* v. *Constable,* 16 Or. 407 (19 Pac. 13); *State* v. *Gallo,* 18 Or. 423 (23 Pac. 264); *Craft* v. *Dall's City,* 21 Or. 53 (27 Pac. 163); *State* v. *Bartmess,* 33 Or. 110 (54 Pac. 167). The object of requiring a statement of the facts expected to be proved by a witness who is not per-

36 OR.—14.

mitted to testify is to advise the court, so as to permit it
to judge of the relevancy and materiality of such facts :
*Stanley* v. *Smith*, 15 Or. 505 (16 Pac. 174). If it be as-
sumed that on the cross-examination of a witness such
declaration is required, an examination of the statement
so made by defendant's counsel, in compliance therewith,
does not disclose that the questions were propounded to
Simmons for the purpose of testing his accuracy, veracity,
or credibility, and they were not admissible for that pur-
pose.

9.   It is contended that the court erred in admitting
testimony tending to show that the Pacific Express Com-
pany was the owner of the money alleged to have been
stolen, and in charging the jury to the effect that, if they
believed said company was at the time of the alleged lar-
ceny doing business in this state as a corporation organ-
ized under the laws of Nebraska, it was not material that
such company was regularly organized or had complied
with the laws of this state concerning the transaction of
its business ; it being sufficient to warrant a conviction if
it appeared that said company was doing business in this
state as a corporation. It is argued that notwithstanding
the indictment charged that the money alleged to have
been stolen was the property of the "Pacific Express Com-
pany, a corporation incorporated under the laws of Ne-
braska," the state was permitted, over defendant's objec-
tion and exception, to offer in evidence what purported to
be articles of incorporation of a company under the name
of "The Pacific Express Company," and that, the allega-
tion of ownership being material, the variance in the cor-
porate name was fatal. An examination of the indictment
shows that no quotation marks are used in stating the
name of the corporation from which the money is alleged
to have been feloniously taken. The articles of incorpo-
ration offered in evidence contain the following recital :

"The name of said company shall be 'The Pacific Express Company,' and the place of transacting its business shall be the City of Omaha, in the County of Douglas and State of Nebraska." Defendant's counsel, in support of the point for which they contend, cite the case of *McGary* v. *People*, 45 N. Y. 153, in which the accused was tried upon an indictment charging him with setting fire to and burning a building belonging to the Phœnix Mills Company, a corporation, etc.; and, evidence having been admitted showing that the name of the corporation was "The Phœnix Mills of Seneca Falls," it was held, in reversing a judgment of conviction, that the misnomer rendered the variance fatal, notwithstanding the corporation was generally known by the name stated in the indictment. The opinion in that case was written by ALLEN, J., in which CHURCH, C. J., and RAPALLO, J., concurred. Mr. Justice ANDREWS concurred in the result only, and on another ground for reversal stated in the opinion, while GROVER, PECKHAM, and FOLGER, JJ., dissented. It will thus be seen that the opinion on the main point, not having been concurred in by a majority of the court, is entitled to no more consideration than the argument of a dissenting opinion. The variance in that case is much more apparent than in the case at bar, wherein the failure to capitalize the first letter of the definite article which is made a part of the corporate name constitutes the only variance,—a difference so insignificant that the defendant could not possibly be misled thereby.

10. The indictment charges that the Pacific Express Company is a corporation incorporated under the laws of the State of Nebraska, etc. *Quære:* Is such averment so essential to the description of the corporation as to require proof of more than its *de facto* existence, thereby rendering erroneous the court's instruction to that effect? In *McCarney* v. *People*, 83 N. Y. 408 (38 Am. Rep. 456),

the accused was charged with stealing twelve barrels of whisky, which were alleged to be the property of the "Farmers' and Mechanics' National Bank of Buffalo, then and there being a body corporate organized and existing under and by virtue of the laws of the State of New York." At the trial evidence was produced which showed the due organization and existence of the corporation under the laws of the United States, by the name set forth in the indictment. The accused having been convicted, it was held, in affirming the judgment, that the averment of incorporation under the laws of New York was surplusage that need not be proved. Mr. Chief Justice Folger, in rendering the decision of the court, says : "The averment in the indictment was that the property stolen was owned by a body corporate. It named the corporation by its true corporate name. It might have stopped there ; for all that is needed in an averment of ownership in a corporation is to state the fact of ownership in a corporate body, and to give the name of the corporate owner correctly." In *Braithwaite* v. *State*, 28 Neb. 832 (45 N. W. 247), it was held that, where property is stolen from a corporation, it is unnecessary, on the trial of the party accused thereof, to introduce the articles of association or charter of the corporation. Mr. Justice Maxwell, in speaking of the party from which the property was stolen, says : "If it is in fact a corporation, and as such was lawfully in possession of certain property which has been stolen from it, it is sufficient to allege in the indictment or information its corporate character, and on the trial prove that it is a corporation *de facto;* in other words, it is sufficient to prove that it is a person in fact, without proving how it came into existence—the material inquiry being, was the property of such person stolen from it by the one accused of the larceny?" To the same effect, see *People* v. *Schwartz*,

32 Cal. 160; *Reed* v. *State*, 15 Ohio, 217; *State* v. *Grant*, 104 N. C. 908 (10 S. E. 554); *People* v. *Davis*, 21 Wend. 309. No error was committed in giving the instruction of which the defendant complains.

11. It is contended that no competent evidence was produced tending to show that the Pacific Express Company was even a *de facto* corporation, and that the court erred in failing to instruct the jury to the effect that, before they could find the defendant guilty, they must be satisfied beyond a reasonable doubt, from the evidence introduced at the trial, that the Pacific Express Company was a corporation, and not a partnership or a joint stock company. Judge Thompson, in his exhaustive and valuable work on Corporations (section 8207), says that a corporation *de facto* exists when there are "(1) a charter or statute under which a corporation with the powers assumed might have been engaged; (2) a *bona fide* attempt to organize a corporation under such charter or statute; (3) an actual user of the corporate powers, or some of them, which might have been rightfully used by such an organization." The state was permitted to offer in evidence, over defendant's objection and exception, Sections 123 and 124 of the Compiled Laws of Nebraska, relating to the objects and powers of private corporations, incorporated under the laws of that state, which sections were contained in a bound volume having the following inscription on the title page: "The Compiled Statutes of the State of Neb., 1881 (4 ed.), with Amendments, 1882 to 1889. All Laws of a General Nature in Force November 1, 1889. Published under Authority of the Legislature, by Guy A. Brown and Hiland H. Wheeler." The volume had no seal or imprint of a seal, and contained no evidence of authenticity, except the following certificate:

"LINCOLN, NEBRASKA, October 26, 1889.

I, Guy A. Brown, appointed by the Legislature of the State of Nebraska to compile the general laws of said state, do hereby certify that the several acts and resolutions contained in this volume are, with the exception of words contained in ( ), true and accurate copies of the original rolls on file in the office of the secretary of state of said state.          GUY A. BROWN, Compiler."

The state was also permitted to offer in evidence, over defendant's objection and exception, what purported to be a certified copy of articles of incorporation of the Pacific Express Company, under the hand and seal of G. S. Haws, Secretary of State of the State of Nebraska, and also to offer testimony tending to show that the Pacific Express Company had been engaged in the general express business in the State of Oregon about nine years ; that it employed clerks, messengers, and route and express agents, and maintained express offices in this state ; that it issued receipts for money deposited with it for transportation over the lines on which it operated, several of which receipts were offered in evidence ; that it promulgated rules, and sent them to its agents for their guidance ; that it had a president and secretary ; and that H. Beckwith, its route agent, deposited for it with the State Treasurer of the State of Oregon the sum of $50,000 in United States bonds.

Our statute provides, in effect, that books printed and published under the authority of a sister state, and purporting to contain the statutes of such state, are admissible in this state as evidence of such law : Hill's Ann. Laws, § 725.   Sections 123 and 124 of the Compiled Statutes of Nebraska were therefore admissible in evidence, as were also the articles of incorporation of the Pacific Express Company ; but whether such articles comply with the requirements of said sections it is not necessary to determine, for an examination thereof shows

a *bona fide* attempt in that direction, and this, with proof
of user of corporate powers by the Pacific Express Com-
pany, establishes its *de facto* existence.    It may well be
questioned whether such a degree of proof of the corpo-
rate existence of the Pacific Express Company was re-
quired, even under the very formal allegations of the
indictment.    In *People* v. *Ah Sam*, 41 Cal. 645, proof of
the existence of a corporation known as the Chartered
Bank of India, Australia, and China, was permitted to
be offered by reputation that it was engaged in the bank-
ing business, and issued bank bills which passed as cur-
rent in certain countries.    An exception to such mode of
proof having been reserved, Mr. Justice TEMPLE, speak-
ing for the court in affirming the judgment, says : "It
would be equally an offense whether the company be
actually incorporated or not, so it is acting as a corpora-
tion, and issues bank bills which are current.    So, too,
as a matter of identity, we think the description is satis-
fied by proof that the company is known as a corporate
company, and is acting as such, and as such issues bills
which come within the statute.    The case is widely dif-
ferent where a suit is pending in which the legal exist-
ence of the corporation may be made an issue."

12.    It is contended that the court erred in charging
the jury in its fifth and seventh instructions, relative to
the measure of testimony necessary to corroborate the tes-
timony of an accomplice, and in failing to give certain in-
structions requested by the defendant upon that subject.
While the instructions complained of may not have been
as ample as the law required, the court in other parts of
its charge gave, in substance, Sections 845, 1371, Hill's
Ann. Laws, as far as applicable, and no error was com-
mitted in this respect :  *State* v. *Anderson*, 10 Or. 448 ;
*State* v. *Hansen*, 25 Or. 391 (35 Pac. 976, 36 Pac. 296) ;
*State* v. *Bartmess*, 33 Or. 110 (54 Pac. 167).

13.   The co-defendant, Frank Klein, having entered a plea of guilty to the joint indictment, it is contended that he was not a competent witness for the state, and that the court erred in permitting him to testify against the defendant at the trial herein.   In *State* v. *Magone*, 32 Or. 206 (51 Pac. 452), it was held that one who was jointly indicted with a defendant on trial, but who has entered a plea of guilty, is a competent witness for the state.   No error was committed in this respect.

14.   It is contended that the verdict hereinbefore set out is special, and was based upon the assumed commission of a crime not charged in the indictment, and that the court erred in refusing to arrest the judgment on the ground that it was unsupported by the verdict.   A general verdict upon a plea of not guilty is either "Guilty" or "Not Guilty :"   Hill's Ann. Laws, §. 1378.   A special verdict is one by which the jury finds the facts only, leaving the judgment to the court.   It must present the conclusions of fact, as established by the evidence, and not the evidence to prove them ;   and these conclusions of fact must be so presented as that nothing remains to the court but to draw conclusions of law upon them :   Hill's Ann. Laws, § 1379.   What has been said upon the subject of simple larceny being necessarily included in the aggravated offense of larceny in a building need not be here repeated.   The verdict, although special, complies with all the requirements of Section 1379, Hill's Ann. Laws, and the court was enabled to draw the conclusions of law therefrom.   No error prejudicial to the defendant having been committed by the trial court, it follows that the judgment is affirmed.                             Affirmed.

Decided 13 August, 1900.

ON PETITION FOR REHEARING.

[ 62 Pac. 1128.]

MR. JUSTICE MOORE delivered the opinion.

15.   In reviewing the decision in this cause upon defendant's petition for rehearing, we find that in referring to the testimony of Samuel Simmons, the opinion improperly states that "This witness, on his direct examination for the state, made no statement tending to show by whose authority he went to the premises of Samuel Klein to search for the money."   The bill of exceptions show that "Pending the examination of witnesses in said case one Samuel Simmons was called on behalf of the state and testified, among other things, in his direct examination, that he found $4,800 of the money alleged to have been stolen in the yard of Mr. Samuel Klein, father of the defendant Frank Klein.   (This defendant Frank Klein claimed to have turned state's evidence and was a witness against the defendant Otis Savage on this trial) ; that he searched for and found the money in pursuance of directions and information given him by said Frank Klein."   This statement was inadvertently overlooked when the opinion was written, the writer being misled by what purported to be a copy of the witness' testimony given on his direct examination, in which he made no statement whatever tending to show by whose direction he went to the premises of Samuel Klein to search for the money.

The court having refused to permit Simmons to answer the questions propounded to him on his cross-examination, defendant's counsel called him as their witness and on his direct examination secured the information which they sought;   and this presents the question whether, if it be assumed that an error was committed in the

first instance, it was not cured in the manner indicated. Judge Thompson, in his work on Trials (section 707), in commenting upon this subject, says : ''An error of the court in excluding the evidence of a witness does not injure a party, if the witness is afterwards permitted to testify fully in respect of the matter excluded.'' In *State* v. *Biggerstaff*, 17 Mont. 510 (43 Pac. 709), it was held that where a witness when called by the state gives evidence which was excluded when called by the defense, there is no error of which the defendant can complain.    In *State* v. *Coates*, 61 Pac. (Wash.) 726, it was held that where a defendant in a prosecution for burglary was erroneously denied the privilege of cross-examining the state's witness, who was an accomplice, as to what he did with stolen money, and as to his connection with burglaries, the fact that he was thereafter permitted to go into the matter fully rendered the error harmless.

We think that defendant's counsel, by making Simmons their witness and proving by him on his direct examination the fact which they were prevented from showing on his cross-examination, thereby waived the error of which they now complain, and hence the petition for a rehearing is overruled.                    Rehearing Denied.