[Filed December 19, 1887.]
JOHN STANLEY, RESPONDENT, *v.* CYRUS SMITH
ET AL., APPELLANTS.

EXCEPTION—WHEN INSUFFICIENT.—An exception to the ruling of the court refus-
ing to allow a question to be answered presents no question for review on
appeal, unless the bill of exceptions discloses what facts were sought to be
elicited by the question. (*Kelley* v. *Highfield,* 14 Pac. Rep. 743, followed.)

EVIDENCE—RECORDED DEED COMPETENT.—The record of a conveyance duly
recorded, or a transcript thereof duly certified by the county clerk in whose
office the same may have been recorded, may be read in evidence in any court
in this State with like force and effect as the original conveyance.

EVIDENCE—OBJECTIONS THERETO.—When evidence is offered, the better practice is
for counsel to submit the objections thereto which are relied upon, so that one
ruling may dispose of them.

SECTION 3043 OF HILL'S CODE CONSTRUED.—This is a remedial statute, and its
provisions must be liberally construed in furtherance of the legislative intent,
and its effect was to make unsealed deeds which had been recorded of the same
effect and validity as if they had been sealed.

PRESUMPTION OF FRAUD—WHEN DOES NOT ARISE.—If a deed were intended as a
deed of trust, and was taken by the plaintiff for that purpose, and was such as
would necessarily delay M. S. & Co. in the collection of their claim, the law will
not, from these facts alone, presume that such deed was executed with a fraudu-
lent intent. These facts might be weighed with the other facts in the case, but
standing alone, they raise no presumption of fraud.

INSTRUCTION—WHEN NEED NOT BE GIVEN.—An instruction which in effect with-
draws from the consideration of the jury material facts, and which directs them
to base their verdict on certain specified facts, and which instruction ignores
other material facts in evidence, ought not to be given.

APPEAL from Douglas County.   Affirmed.

*W. R. Willis,* for Appellants.

*J. W. Hamilton,* and *J. C. Fullerton,* for Respondent.

STRAHAN, J.—This is an action of ejectment to recover an
equal undivided one eighth of certain real property situated in
Douglas County.   The complaint is in the usual form in such
case.   The answer traverses the material allegations of the com-
plaint, except it impliedly admits that during the time stated in
the complaint the defendant withheld said premises from the
plaintiff.   The answer, then, by way of further and separate
defense, alleges that Alanson Miller, in his lifetime, owned the
real property in controversy; that he died intestate in 1877,
leaving seven heirs, including Asa Miller; that defendant had

succeeded to the interest of Alanson Miller, Jr., who was one of the heirs at law of Alanson, Sr.; that on the twentieth day of March, 1877, Marks, Sideman & Co., in due form, caused Asa Miller's interest in said land to be attached, and thereafter, in due course of law, obtained a judgment against him in the County Court of Douglas County, Oregon, for $351.50, and $29.70 costs and disbursements. The answer then alleges the issuance of an execution on said judgment, and the sale of said premises to William J. Freedlander, the confirmation of the sale by the court, and the execution and delivery of a deed to the purchaser.

The deed recites that the sheriff sold all the interest Asa Miller had in said land on the fifth day of July, 1877, instead of the 20th of June, the date of the attachment, and it is alleged that this is a mistake which was not discovered until after the action was commenced. The defendant deraigns title by mesne conveyances from Freedlander. The answer then alleges in substance that the plaintiff, on or about the twenty-first day of June, with the purpose and intent to overreach, cheat, and defraud Marks, Sideman & Co., and to prevent them from collecting their said claims and judgment which they might recover against the said Asa Miller, procured him, said Asa Miller, and his wife, to execute, acknowledge, and deliver to him a deed purporting to convey to him, said John Stanley, all his interest in his deceased father's estate. It is then stated that said deed bears date June 18, 1877, but that said date is not the true date; that plaintiff caused said deed, and the acknowledgment thereof, to be falsely dated, so that it appears on its face to have preceded the levying of said attachment, when in truth it was executed subsequently thereto; that said Asa Miller at said time had no other property subject to execution; that said deed was and is fraudulent and void, and was intended to hinder, delay, cheat, and defraud the creditors of said Asa Miller, and especially Marks, Sideman & Co., out of their just demand against him.

The reply put the new matter in the answer in issue. The cause was tried before a jury, and resulted in a verdict and judgment in favor of the plaintiff, from which judgment this appeal

is taken. Upon the trial, the defendant took a number of exceptions to the ruling of the court in admitting and excluding evidence, as well as to instructions given and refused. These exceptions, or such of them as we deem of any importance, will now be considered.

1. *Bill of exceptions must show answer expected.* On his cross-examination, appellant's counsel asked the plaintiff John Stanley, who had been sworn as a witness in his own behalf, if he had **not**, after taking his deed from Miller, acted as agent for William McBee and his mother in procuring deeds from the Liggett heirs to set up against the Miller title to those lands, and if it was not in consequence of a judgment obtained in the Circuit Court against McBee on the litigation of these titles that the sheriff put him off the land; but on objection being made, the witness was not allowed to answer. The defendent then called Robert Phipps as a witness, who testified that he was acquainted with Asa Miller, with Marks, Sideman & Co, and with the plaintiff. The defendant then asked him if he had a conversation with Asa Miller about the middle of June, 1877, in which he (Miller) wanted to transfer to him his interest in his father's estate, and if so, what reason he gave for wanting to make the transfer; and for like reasons this question was not answered. The defendant asked Asa Miller, who was one of his witnesses, this question: "Did not Flood & Co. bring an action against you in the Justice's Court for Deer Creek precinct, shortly after you made this deed to Stanley to collect the amount you were owing them?" The court sustained objections to each of these questions, and the witness did not answer either of said questions, nor does the bill of exception disclose what facts the defendant expected to elicit, or what facts those questions were designed to bring before the jury. We have held that such exceptions present no question for review on appeal. The presumption is that the judgment of the court below is right. To overthrow this legal intendment the appellant must make it appear affirmatively on his appeal that prejudicial error was committed against him on the trial. Such error is not made to appear by asking a question which might possibly or even probably elicit a fact

which tends to support the appellant's contentions; but if such question is not allowed by the court to be answered, the bill of exceptions must disclose what facts the party expected to prove by the witness, so that this court may judge of their relevancy or materiality. (*Kelley* v. *Highfield*, 14 Pac. Rep. 744.)

2. *Record of a deed competent evidence.* It appears from the bill of exceptions that the plaintiff offered in evidence the record of the deed from Asa Miller and wife to John Stanley, which was objected to as irrelevant, immaterial, and incompetent, and not the best evidence. The court overruled these objections and admitted the record, to which ruling the defendant excepted. This record is not made a part of the bill of exceptions, and is not before us, nor does it anywhere appear of record that this deed as it appeared of record was not executed with all the formalities required by law to entitle it to be recorded. It was the record of the *deed* from Asa Miller and wife to John Stanley. Such a record is competent evidence. Hill's Code, section 3028, provides that "the record of a conveyance duly recorded, or a transcript thereof duly certified by the county clerk in whose office the same may have been recorded, may be read in evidence in any court in this State, with the like force and effect as the original conveyance." So far as appears from the transcript this record was properly admitted in evidence, and the exceptions to the ruling of the court in admitting it cannot be sustained.

3. *Construing section 3042 of Hill's Code.* The bill of exceptions further shows that the plaintiff offered in evidence the deed from Asa Miller and wife to Stanley. The defendant objected because it was irrelevant, immaterial, and incompetent, which objections were overruled by the court, and said deed was admitted in evidence. The defendant then, before the deed was read or submitted to the jury, moved the court to exclude said deed as evidence, for the reason that it had not been properly executed, in that it was unsealed; but the court overruled this motion, to which an exception was taken. The defendant ought to have made and urged all the objections he had to this deed at the time it was offered. It is a loose and irregular practice for counsel, when a paper is offered in evidence, to submit certain objections to its introduction,

and upon those objections being overruled and the paper ordered to be admitted, to proceed to state other objections. All objections which counsel intend to rely upon ought to be submitted at one time so that one ruling may dispose of them. But for the purposes of this case, assuming that these objections were all in time, and we will so treat them, the court did not err in overruling them.

In reaching this conclusion we do not consider or decide whether the deed was properly sealed or not, or what would be the effect of the record of the deed which was offered without the introduction of the original deed, but place the case entirely on the curative statute of 1878. The provision is in Hill's Code, section 3042, and is as follows: "All deeds to real property heretofore executed in this State, which shall have been signed by the grantors in due form, shall be sufficient in law to convey the legal title to the premises therein described from the grantors to the grantees, without any other execution or acknowledgment whatever; and such deeds so executed shall he received in evidence in all courts in this State, and be conclusive evidence of the title of the lands therein described against the grantors, their heirs and assigns. "The occasion for the enactment of this statute is well known. It is a part of the legislative and judicial history of the State. Previous to its enactment many deeds had been executed in this State covering large amounts of valuable property, but which by some oversight or neglect, some technical formality required by law had been omitted. Such omission in no manner affected the good faith of the parties or the real rights which were designed to be created or transferred by such deeds; but as property increased in value, designing persons entered into the business of searching the records for defective titles, and then causing a second deed to be made for the same property to some person in collusion with them, and instituting an action to recover the property. This enactment was designed to defeat such nefarious practices, and to confirm to the persons who had purchased the property and paid for it the full legal title, and which they had not received by reason of some slight defect or informality in their deeds. Such a statute.

is, in the fullest sense, a remedial statute, and its purposes and objects are to be liberally construed and applied for the purpose of giving full effect to the legislative intent, and accomplishing the beneficent purposes of the enactment.

There is nothing in the Constitution of this State prohibiting the passage of retrospective laws in such cases, and where not prohibited, the power of the legislature to pass them has been generally sustained. The formalities required in the execution of a deed are purely statutory, and it is always competent for the legislature to declare by what form of conveyance the title to real property may be transferred. The rule as to curative statutes in such cases seems to be this: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something, the necessity for which the legislature might have dispensed with by a prior statute, then it is not beyond the power of the legislature to dispense with it by a subsequent statute. And if the irregularity consists in doing some act which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." (Cooley on Constitutional Limitation, 371.) Such legislation is sustained by numerous authorities. (*State* v. *City of Newark*, 3 Dutch. 185; *Foster* v. *Essex Bank*, 16 Mass. 244; *Gashorn* v. *Purcell*, 11 Ohio St. 641; *Matter of Sticknoth*, 7 Nev. 223; *Dentzel* v. *Waldie*, 30 Cal. 138; *Carpenter* v. *Pennsylvania*, 17 How. 456; *Barrett* v. *Barrett*, 15 Serg. & R. 72; *Lessee of Dulany* v. *Dangerfield*, 6 Gill & J. 461; *Mazay* v. *Wise*, 25 Ind. 1; *Watson* v. *Mercer*, 8 Peters, 88; *Boyce* v. *Sinclair*, 3 Bush, 261; *Bleakney* v. *Farmers' and Mechanics' Bank*, 17 Serg. & R. 63; *The Syracuse City Bank* v. *Davis*, 16 Barb. 183; *Chesnut* v. *Shane's Lessee*, 16 Ohio, 599; *Trustees of Cuyahoga Real Estate Association* v. *McCaughy*, 2 Ohio St. 152; *Andrews* v. *Russell*, 7 Blackf. 473; *Inhabitants of Goshen* v. *Inhabitants of Stonington*, 4 Conn. 209; *Bank* v. *Allen*, 28 Conn. 98.)

4. But it is further claimed by counsel for the appellant that if it were competent for the legislature by the act under consideration to give validity to deeds which, without this enactment,

would have been invalid, still the operation of the curative act must be confined to the immediate parties to the deed, and could not be extended to other persons who might before the passage of the act acquire an interest in the subject-matter of the controversy. The statute on its face assumes to make such deed valid and "conclusive evidence of the title to the lands described therein, against the grantors, their heirs and assigns." Whether this statute would be held operative against a *bona fide* purchaser for value and without any notice of the first vendee's right, it is not now necessary to decide, but I am strongly inclined to think it would not; but that question was not made in the court below. The pleadings are silent on this point; nor were any instructions refused or given by the court on this subject to which an exception was taken. And under any view we are inclined to take of the subject, unless the defendant is such *bona fide* purchaser, he stands in Miller's shoes, and is concluded by whatever would have bound or affected Miller. It follows from these considerations that the court did not err in receiving said deed in evidence, and in refusing to exclude it from the jury after it had been admitted.

5. *A deed per se raises no presumption of fraudulent intent.* The appellant asked the court to give the jury the following instruction: "If the deed of Miller and wife to the plaintiff was intended as a deed of trust, and taken by the plaintiff for that purpose, and the transfer was such as would necessarily delay Marks, Sideman & Co. in the collection of their claim, the law will presume that it was done with a fraudulent intent." This instruction was properly refused. In the trial of an action of ejectment, the legal title must prevail over a mere equity; and unless this deed could be overthrown on the ground of fraud, it must be held operative. The effect of every conveyance of property by one indebted may be to delay some creditor in the collection of his debt, but such conveyance is not on that account *per se* fraudulent; nor will the law adjudge such a transaction fraudulent for that reason alone. It may be a circumstance to be weighed and considered with all the other facts in the case, but standing by itself, it raises no such presumption.

6. *Jury should consider all the evidence offered.*   The appellant also asked the court to give the jury this instruction : "The fact that the note offered in evidence by the plaintiff being found in his possession, with the assignment of Flood & Co. to him indorsed upon it, raises a satisfactory presumption that it is still his property, and has not been paid to Miller on the purchase-price of the land." This instruction was refused. The plaintiff had testified in effect that when he purchased the land in controversy of Miller, he was to pay this note to Flood & Co. as a part of the consideration for the land, and that he subsequently paid the note to Flood & Co., and received the same, with their indorsement thereon. The instruction asked in effect withdrew all of these facts from the consideration of the jury, and directed them to find on the isolated facts as to the indorsement and possession of the note. This was not proper. The jury had the right, and it was their duty to consider all the facts submitted to them on this subject, and an instruction, the effect of which was to withdraw any portion of the facts from them, or directing them to find as to the effect of particular facts, ignoring others bearing on the same subject and equally important, would have been highly improper. The same remarks are applicable to the third instruction asked by the appellant, which was refused.

7. The fourth instruction which was asked by the appellant, defining what constituted a seal, and the effect of an unsealed deed, was refused, and the view we have taken of the confirmatory statute renders this instruction improper. That statute rendered the deed operative without a seal. In other words, as to all deeds theretofore signed by the grantors, a seal was declared to be unnecessary.

8. The only important issue of fact made by the pleadings in the view we have taken, was whether or not Miller's deed to the plaintiff was in fact executed after Marks, Sideman & Co. caused said property to be attached. The answer alleges that it was so antedated, and this issue seems to have been fully submitted to the jury and fairly tried, and the jury, in effect, found that it had not; but that it was executed on the day of its date. This dis-

posed of the only defense which appears to have been seriously relied upon in the court below.

Let the judgment be affirmed.

LORD, C. J., did not sit at the hearing of this case, and took no part in its decision.