## COLLINS v. GOLDSMITH.

(Circuit Court, D. Oregon. January 7, 1896.)

### No. 2,113.

**1. DEEDS—OF MARRIED WOMAN—STATUTE CURING DEFECTIVE EXECUTION.**

One B., in February, 1855, acting for himself and as attorney in fact for his wife, executed a deed to one F. of land in Oregon belonging to his wife, and in July of the same year B.'s wife alone executed a deed of the land to F. The statutes of Oregon at the time gave no power to a married woman to convey land, except by deed in which her husband should join, nor any power to execute a power of attorney. Subsequently the legislature of Oregon passed an act providing that all deeds theretofore executed, which had been signed by the grantor in due form, should be valid, without any other execution or acknowledgment. *Held,* that such statute was intended only to remedy defective execution of deeds by persons having power to make them, not to validate deeds which the grantors had no power to make, and accordingly did not give validity to the deeds of B. and his wife, which passed only B.'s right of curtesy in the land.

**2. JUDGMENTS—EFFECT—EJECTMENT—OREGON STATUTE.**

The statutes of Oregon provide that in actions to recover real property the jury shall find the nature and duration of the estate or interest of the successful party in the land. *Held,* that a judgment in an action of ejectment, in which it was found that the defendant was entitled to a freehold estate in the land for the life of another, was conclusive as to the title of a grantee of the defendant in that suit in an action subsequently brought against such grantee by a grantee of the plaintiff therein.

This was an action of ejectment by J. L. Collins against L. Goldsmith to recover lands in Polk county, Or.

Raleigh Stott and R. P. Boise, for plaintiff.

L. B. Cox, for defendant.

BELLINGER, District Judge. This is an action of ejectment, submitted without a jury, on stipulation of the parties, to recover possession of certain real property in Polk county. The plaintiff claims title in fee simple, by deed executed October 19, 1877, from Violet W. Elliott, who, as Violet W. Berry, was the grantee of the lands in controversy from the United States under what is known as the "Donation Act." On February 5, 1855, William J. Berry, then the husband of said Violet, acting for himself and as attorney in fact for his wife, executed a deed to the premises to one Fuller for the expressed consideration of $2,000. On July 22d following, the wife alone executed a deed to Fuller for the premises for the expressed consideration of $1,400. Fuller conveyed his title to one Teal, who conveyed to defendant. It is conceded that the power of attorney under which Berry executed the first deed to Fuller and the separate deed of Mrs. Berry were nullities. A married woman cannot invest another with power to convey her interest in real property, nor herself convey it by a deed not joined in by her husband, without a statute to that effect. But it is claimed by the defendant that these deeds were made effective by a curative act of the legislature passed in 1878. This act is entitled "An act to cure

defects in deeds heretofore made to real property, that are defective in execution or acknowledgment, and to cure defects in judicial sales of real property and sales of lands by executors and administrators." The act provides as follows:

"All deeds to real property heretofore executed in this state which shall have been signed by the grantor in due form, shall be sufficient in law to convey the legal title to the premises therein described from the grantors to the grantees, without any other execution or acknowledgment whatever; and such deeds so executed shall be received in evidence in all courts in this state and be conclusive evidence of the title to the lands therein described against the grantors, their heirs and assigns." Laws 1878, p. 82, § 1.

I am of the opinion that the Fuller deeds are not within the operation of this act. The object of this act is to cure defects in the execution or acknowledgment of deeds theretofore executed. The power of alienation is a different matter from that of the form or character of the instrument by which that power is sought to be made effective. The statute is manifestly intended merely to remedy defective execution of existing power. It does not enlarge the power of transfer of title to real estate, or remove the disabilities that any class of persons are under to make such transfers. The statute of Oregon provides that the real property of the wife may be conveyed by the joint deed of the husband and wife. At common law a married woman could not dispose of her freehold except by some matter of record as a fine and recovery. If a married woman was not empowered to convey by any deed, either joint with her husband or otherwise, it certainly would not be claimed that a statute such as the one in question would make her unauthorized deed effective. The statute only gives validity to such deeds as the parties were empowered to make. As already stated, it does not remove disabilities; it merely cures defects; otherwise the deed of a minor or lunatic would become effective by its operation. If the statute was intended to give validity to the separate deed of a married woman,—to a deed which she was under a disability to make,— there is no reason why its operation should be limited to deeds theretofore executed. The grantees in such deeds executed after the passage of this act are as much entitled to consideration as those who took deeds prior thereto. If it was intended to recognize a new method of transfer of titles by married women, it must be supposed that the act would have changed the existing law so as to authorize such transfers by separate deed, whenever executed. This consideration does not apply to mere defects in deeds, since it is within the power of the parties to avoid them, while it is not possible for a married woman to convey her title by her separate deed, however formal its execution. In Stanley v. Smith, 15 Or. 509, 16 Pac. 174, the court says that the act of 1878 was to correct deeds where some technical formality required by law had by some oversight or neglect been omitted. It is not material to consider the question as to whether the legislature may give effect to such deeds as those in question here. Randall v. Kreiger, 23 Wall. 137, is cited in support of such power in the legislature. The right involved in that case was a right of dower. The court says:

"During the life of the husband the right is a mere expectancy or possibility. In that condition of things the lawmaking power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs, apparent or presumptive, before the death of the ancestor. Until that event occurs, the law of descent and distribution may be molded according to the will of the legislature."

These considerations would not apply in the case of a retroactive law of the Oregon legislature divesting a married woman of her real property, acquired as this property was. Nevertheless, it may be assumed that this case is within the power of the legislature to take "away the right dishonestly to repudiate an honest contract or conveyance to the injury of the other party"; yet the intention to do so is not to be lightly inferred against the settled policy of the law which has been steadfastly maintained, although nearly 18 years have elapsed since the curative act was passed. In May, 1877, Violet W. Elliott brought an action of ejectment to recover the lands in controversy against defendant's grantor, Teal, in which she claimed to be the owner in fee of such lands. The case was tried in this court upon a stipulation of facts, without a jury, and the court found that the defendant was the owner of a freehold estate in the premises during the life of William J. Berry, the former husband of the plaintiff (the parties having been in the meantime divorced), and was entitled to the possession thereof during the lifetime of said Berry, and as a conclusion of law the court found that the defendant was entitled to a judgment of dismissal. It is claimed by plaintiff that this judgment is conclusive as to the defendant's title, and such is my opinion.

The statute of the state provides that in actions to recover real property the jury shall find, if the verdict be for the plaintiff, "the nature and duration of his estate in such property," etc., and, if the verdict be for the defendant, "the estate in such property, or part thereof," for which he defends, "or license or right in the possession of either, established on the trial by the defendant, if any; in effect as the same is required to be pleaded." [1] As to the pleadings in such actions, it is provided, in effect, that the parties shall set forth the nature of their respective claims. "The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life or for a term of years," etc. "The defendant shall not be allowed to give in evidence any estate in himself, or another in the property, or any license or right to the possession thereof, unless the same be pleaded in his answer. If so pleaded, the nature and duration of such estate, or license or right to the possession, shall be set forth with the certainty and particularity required in a complaint." Under these provisions, the findings and judgment in actions for the recovery of real property are not restricted to the mere question of right of possession. The nature of the estate, upon which the right of possession depends, must be found, whether it

---

[1] 1 Hill's Code, § 320, subd. 2.

be in fee, for life, or for a term of years, and for whose life, etc. It cannot be said, therefore, that the former adjudication determines nothing but the right of possession. It necessarily determines every question of title, interest, or right under which the prevailing party claims. In the former action, the defendant Teal claimed to be the owner in fee of the lands in dispute here. The court was required to determine as to that claim, to determine the nature of the estate upon which Teal's right of possession depended, and its determination was against the claim of a fee-simple title. The court determined in legal effect that Teal took nothing in virtue of the two deeds to Fuller, except such interest as Berry, the husband, had in the premises at the time he executed the deed for himself and as attorney in fact for his wife to Fuller, and that was an estate by the courtesy in the wife's lands. It is argued against the estoppel of the former judgment, that the curative act has created a new title, with which the defendant is invested. But it is not the province of the legislature to create rights or transfer property as between individuals. It may create a new rule of evidence by which existing rights or titles are proved, and the act in question purports to do no more than this. It has made certain instruments of writing admissible in evidence to prove title that were not before admissible for that purpose. If the curative act of 1878 applies in the present case, its effect is to make the Fuller deeds admissible in evidence to prove the title claimed by the defendant, but the former adjudication is not affected by the fact that evidence of title is available to him that was not available to his immediate grantor in the former action. The right claimed by the defendant was determined in that action, and that determination is final.