## BARNES v. MULTNOMAH COUNTY.

(Circuit Court, D. Oregon. May 7, 1906.)

No. 3,011.

1. COUNTIES—CONVEYANCE TO COMMISSIONERS—EFFECT.

B. & C. Comp. Or. § 2519. provides that all real estate conveyed by any form of conveyance to the inhabitants of any county, or to other persons "for the use of such county," shall be deemed the property of the county to the same effect as if made to the inhabitants of the county by their corporate name. *Held*, that a conveyance of land to certain grantees, county commissioners of M. county, and their assigns, constituted a conveyance to the county, though it did not recite that it was "for the use of such county."

2. SAME—PURPOSE OF CONVEYANCE—RIGHT TO HOLD—OBJECTIONS—ESTOPPEL.

A county being authorized to purchase and hold lands for some purposes by B. & C. Comp. Or. § 2518. empowering a county to purchase and hold for its own use "land lying within its own limits," the objection that a county to which land was conveyed had no power to take the land for the purposes intended could only be raised by the state, and not by the grantor's heirs.

3. DEEDS—CONSIDERATION—ADEQUACY.

An agreement by a county to furnish its grantor, while he lived on the land conveyed to the county, food, clothing, and supplies as long as he should live was a sufficient consideration to support the conveyance.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 26.]

4. SAME—SEAL.

Where a deed was supported by an actual executed consideration, the omission of the grantor's personal seal, in so far as the same was necessary to import a consideration, was immaterial.

5. SAME—CURING DEFECTS—RETROACTIVE LEGISLATION.

The omission of the personal seal of the grantor in a deed of certain land to a county was cured by the subsequent passage of B. & C. Comp. Or. § 5377, providing that all deeds to real property previously executed

which shall have been signed by the grantors in due form shall be sufficient in law to convey the legal title, without any other execution or acknowledgment whatsoever, etc.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 98.]

6. SAME—CONSTRUCTION—CONTRACT TO CONVEY.

A deed from which the personal seal of the grantor was omitted, but which was otherwise validly executed, operated as a conveyance of the grantor's title in equity, and not as a mere contract to convey, which could not be validated by subsequent curative legislation.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 98, 102.]

This is an action in ejectment. After stating the necessary jurisdictional facts, the complaint alleges that the plaintiff is the owner in fee simple, and entitled to the immediate possession, of the real property in dispute (describing it), and that no one is in the actual possession of said premises, but that defendant is acting as owner thereof. The answer denies each and every allegation of the complaint, and for a separate defense alleges that prior to October 1, 1859, one John Barnes was the owner of a certain donation land claim, that the tract of land described in the complaint is a part of such claim, and that defendant is seized of an estate in fee simple, and is entitled to the possession of said tract through conveyance from the donee. The plaintiff, for reply, after denying the allegation relative to defendant's seisin, sets up that the only claim had by defendant in and to the land in dispute is by virtue of a certain writing (setting the same out by copy). The writing purports to be a deed of conveyance of the following tenor: "I, John Barnes, * * * in consideration of $500 paid to me by E. Hamilton, W. S. Ladd, and Caleb Ritchie, county commissioners of said (Multnomah) county, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, and convey unto said commissioners and assigns forever the following real estate," describing the land in dispute. The instrument is witnessed by three witnesses, and acknowledged before the county clerk, but the private seal of the grantor is wanting. The reply further alleges that the consideration stated in the writing was not the true consideration, and that neither the said sum of $500 nor any sum was paid or agreed to be paid by such commissioners, but that the sole and only consideration therefor was that on October 1, 1859, the said John Barnes being the owner in fee simple of his donation land claim, of the then value of over $3,000, the said county commissioners attempted to agree with him, in consideration that he should sign the above instrument or writing, that said Multnomah county would furnish him with a living on said land, food, clothing, and supplies, so long as he should live, and that Barnes signed and delivered said paper upon said alleged consideration, and not otherwise; that the defendant, or the said commissioners, or any of them, never at any time took possession of said land, or any part thereof; that about 30 days after the signing of said paper John Barnes died intestate, and that plaintiff has succeeded to his interest in the premises. Upon the filing of such reply, the defendant moved the court for judgment on the pleadings in its favor dismissing the complaint, and for the recovery of costs and disbursements.

U. S. G. Marquam, for plaintiff.

John Manning, Dist. Atty., and Carey & Mays, Special Counsel, for defendant.

WOLVERTON, District Judge (after stating the facts). The questions presented are upon the motion for judgment. From the pleadings it appears that defendant's title, if it has any, to the property in dispute is dependent upon the deed set out in the reply. It is shown further by the reply what the true consideration therefor was; so that in reality the court has before it on these pleadings all the

facts necessary to a determination as to the validity of this deed, and the transaction itself, by which it was attempted to convey the property to the county. I say to the county, as the conveyance, if operative to transfer title, was, in effect, a conveyance to the county. Section 2519, B. & C. Comp.

It is urged that, as the words "for the use of such county," employed in the statute, are not contained in the deed, it is without any validity as a transfer to the municipality. I do not so construe the statute. The language was not designed as operative words of a grant in such cases, but to indicate that any property so transferred, that was intended for the use of the county, should be treated and considered and held to be the property of the county. It does not need a declaration in the conveyance, therefore, that the property is for the use of the county in such cases, but it is sufficient that it was designed and intended that it should go by the transfer adopted to the county, and not to the treasurer or committee, etc., as individuals. It is apparent, from the present deed being made to the commissioners by their title, and their assigns, that the property was designed for the use of the county, and for none other.

But plaintiff's counsel further insists that defendant is without capacity to take or hold the property, because it was not in fact purchased or taken over for the use of the county, nor was or is it employed for such a purpose. I am of the opinion, however, that the plaintiff is not in a position to raise the question. The matter has been practically decided by the case of Raley v. Umatilla County, 15 Or. 172, 13 Pac. 890, 3 Am. St. Rep. 142. That was a case instituted for the purpose of quieting the plaintiffs' title to a certain block of land, conveyed to the county in consideration of one dollar, "for the special use, and none other, of educational purposes," requiring that there should be erected thereon a college or institution of learning. It was there insisted, as it is here, that the county was not capacitated to take the property, and therefore that the heirs of the grantor were not precluded from claiming or asserting title thereto. The court, after holding that the county was competent to take in that instance, was seemingly not contented to rest the case on that ground alone, and continued with its exposition, speaking through Mr. Justice Strahan, as follows:

"But if the premise contended for by the appellants were conceded, the conclusion which they seek to draw from it would not follow. The statute plainly confers upon counties the power to acquire and hold real property for certain purposes, and the appellants' contention is that this deed conveys property to the county outside of and for other and different purposes than those specified in the statute. This is a question which these plaintiffs cannot be permitted to raise, and in which they have no interest. That could only be done at the instance of the state."

Thus, in effect, holding that, notwithstanding the county may not have the requisite power to hold property for the purpose for which it might be conveyed, yet, having authority to hold for some purpose, and a conveyance having been made, the grantor is precluded from questioning the capacity of the county to take that which he has conveyed, which is a matter entirely for the state. The principle is well

stated in Chambers v. City of St. Louis, 29 Mo. 543 (a case cited in Raley v. Umatilla County), where it is said:

"The city is duly incorporated with authority to hold, purchase, and convey such real and personal estate as the purposes of the corporation shall require; and if, in holding and purchasing real estate, she passes the exact line of her power, it belongs to the government of the state to exact a forfeiture of her charter, and it is 'not for the courts, in a collateral way, to determine the question of misuser by declaring void the conveyances made in good faith. In this view of the subject we are fully sustained by the authorities."

See, also, Heiskell v. Chickasaw Lodge, 87 Tenn. 668, 686, 11 S. W. 825, 4 L. R. A. 699, and Barrow v. Turnpike Co., 9 Humph. (Tenn.) 307.

The statute (section 2518, B. & C. Comp.) empowers the county to purchase and hold for its use "lands lying within its own limits." Here is authority to purchase and hold land, but whether in fact it has purchased, or whether a particular piece of land it has taken over to itself was for the use of the county, are questions that, while they may concern the individual as a member of the body politic, are not such as he is permitted to raise. This is essentially so as it relates to the individual in general. These are matters for the public service, for the state, as indicated by the authorities above. If the individual in general cannot question the use for which realty is purchased by the county, there exists no greater reason why the individual who has parted with his land to the county for a consideration should be permitted to question it. He stands in no better position for urging, that the property is not properly or appropriately for the use of the county than the individual in general. The property is not his when he has parted with it, and, having no interest therein, he can with no greater reason be heard to urge that it is not, or cannot be, for the use of the county; so that unless it appears that the deed set out in the reply is insufficient for some reason to convey this property to the county, the plaintiff cannot now question the title by which the county holds.

It is further contended that the deed was without consideration to uphold it, and, not being under seal, none would be imported or implied, and that by reason of these infirmities, and of the further condition that the county was incapacitated to take and hold the property, the Legislature could not cure or validate the deed, or make it operative and efficacious as an instrument of conveyance of title. Ordinarily speaking, there could be no question that the consideration is sufficient; it need not be adequate. It is sufficient if it is valuable, and, if valuable, however small it may be, if no creditor's rights come in conflict, or if the transaction is accompanied by no fraud or undue influence, express or implied, the consideration will support the conveyance. 13 Cyc. 533. It will hardly be questioned that a promise or agreement to support the grantor during his life, and especially where the support has been provided, is sufficient to uphold a deed made in consideration thereof. There are many such instances that have received the approval of the courts, and it is unnecessary to cite authorities in support of the proposition. So I take it that, if the real

consideration for the execution of the deed in question was that the county should furnish the grantor "while he lives on said land, food, clothing, and supplies" as long as he should live, as alleged in the reply, it was sufficient to support the conveyance.

The reply shows that the grantor died about 30 days after the signing of the paper, and it is consequential to assume that the county rendered the services agreed upon in the meanwhile, so that the consideration is a past one, and the undertaking on the part of the county wholly executed. The seal is therefore not needful in the way of affixing or importing a consideration, as the deed is supported by an actual consideration that has been wholly executed. Under the statute of Oregon the private seal of the grantor is made requisite to the execution of a valid deed conveying real property, but it is not such an essential that the Legislature may not have dispensed with it, and hence, if omitted, may not have validated by retrospective legislation. This identical question has been settled by the case of Stanley v. Smith, 15 Or. 505, 16 Pac. 174. That was an action of ejectment, and the question arose by reason of a deed being offered in evidence, over objection that it was without a private seal. The court, however, admitted it, because it was said that it had been cured by an act of the Legislature adopted in 1878, now known as section 5377, B. & C. Comp. The act provides that:

"All deeds to real property heretofore executed in this state which shall have been signed by the grantors in due form shall be sufficient in law to convey the legal title * * * from the grantors to the grantees, without any other execution or acknowledgment whatever; and such deeds so executed shall be received in evidence in all courts in this state, and be conclusive evidence of the title to the lands therein described against the grantors, their heirs and assigns."

The court says in that case:

"There is nothing in the Constitution of this state prohibiting the passage of retrospective laws in such cases, and, where not prohibited, the power of the Legislature to pass them has been generally sustained. The formalities required in the execution of a deed are purely statutory, and it is always competent for the Legislature to declare by what form of conveyance the title to real property may be transferred."

The court then quotes the rule applicable to curative statutes, as laid down by Mr. Cooley in his work on Constitutional Limitations (section 371), as follows:

"If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by a prior statute, then it is not beyond the power of the Legislature to dispense with it by a subsequent statute. And if the irregularity consists in doing some act which the Legislature might have made immaterial by prior law, it is clearly competent to make the same immaterial by a subsequent law."

The principle has been several times subsequently reaffirmed by the Oregon Supreme Court. Nottage v. City of Portland, 35 Or. 539, 58 Pac. 883, 76 Am. St. Rep. 513; Thomas v. Portland, 40 Or. 50, 66 Pac. 439; Real Estate Co. v. Gambell, 41 Or. 61, 66 Pac. 441; Ferguson v. Kaboth, 43 Or. 114, 73 Pac. 200, 74 Pac. 466.

The defect of the want of a private seal is a formal matter only, and in all such cases it is generally held that the Legislature has com-

petent authority under the Constitution to cure or validate by retrospective legislation. Of course, it could not cure such defects as want of power in the grantor to convey, as is instanced by the case of Shonk v. Brown, 61 Pa. 320. Nor could it execute a will for the parties, as shown in the case of Alter's Appeal, 67 Pa. 341, 5 Am. Rep. 433. Nor could it cure a deed void for uncertainty. Lowe v. Harris, 112 N. C. 472, 17 S. E. 539, 22 L. R. A. 379. Nor could it probably cure a deed executed by a minor, where the procedure had not been in accordance with law, as is instanced in the case of Mills v. Charleton, 29 Wis. 400, 9 Am. Rep. 578. But the case at bar is not one involving the principles announced in those causes.

It is quite a different thing where the county or corporation not expressly authorized to take is invoking the aid of a court of equity through which to acquire title which has never previously vested. In such a case the court will not lend its aid to enable the corporation to acquire a thing it cannot hold. Case v. Kelly, 133 U. S. 21, 10 Sup. Ct. 216, 33 L. Ed. 513; Chesnut v. Shane's Lessee, 16 Ohio, 599, 47 Am. Dec. 387. Where, however, the grantor has passed his title to an entity competent in any degree to hold it, although not for the specific use for which it is empowered to hold, then it is clearly a matter for the state to determine whether it should properly retain and enjoy the property. The grantor, having parted with his property, can have no further interest to subserve.

Counsel makes the point that the deed without a seal was, in effect, only a contract to convey (citing Hill v. Cooper, 6 Or. 181, and South Portland Land Co. v. Munger, 36 Or. 457, 54 Pac. 815, 60 Pac. 5); and, if so treated, the Legislature could not infuse into it the vitality of a deed. True, the court in these cases sustained the contention there made that the deeds without seal should be treated, for the purpose of obtaining specific performance, as contracts to convey; but the court did not hold that such instruments were insusceptible of validation as deeds of conveyance. But an instrument like the one under consideration is something more than a mere contract to convey. The parties fully intended that it should operate as a completed conveyance, and supposed that such was its actual effect, and such would have been its effect were it not for the omitted seal. As it was, it conveyed the equity, and needed but the seal to carry the legal title. It must be granted that the Legislature could not change a contract of sale into a deed for the parties; but where the parties have not intended a contract of sale merely, but a completed conveyance, and have failed in a formal particular only, they stand in a very different attitude, and the Legislature may validate the instrument retrospectively. I could not, therefore, treat this writing as a contract to convey merely for the purpose of determining the effect of the curative legislation, but must treat it as an imperfect conveyance, and, so treated, it has been cured by such legislation. I hold, therefore, that the deed, aided by the subsequent legislation, is effective to convey the legal title, and that plaintiff is in no position to question the use for which it is held. He is therefore without a cause of action, as shown by the pleadings. The motion for judgment will be sustained as made, and such will be the order of the court.