No. 15,288.

BAINBRICH ET AL. *v.* BOIES.
(158 [2d] 736)

Decided April 30, 1945.

Mr. O. OTTO MOORE, for plaintiffs in error.

Mr. FRANK DELANEY, Mr. C. P. RIGBY, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

JAMES W. BAINBRICH and R. Ebler, plaintiffs in error, were plaintiffs in the district court, and Eyer Boies, defendant in error, was defendant in the district court. The parties hereto will hereinafter be referred to as

plaintiffs and defendant as that position was taken by them in the district court.

Plaintiff Bainbrich is the son and plaintiff Ebler is the son-in-law and successor in interest of other heirs of the grantors in the transaction herein detailed and as such sought, in the first cause of action, to have a deed executed by Rio Blanco county to defendant adjudged to be void and to remove the cloud thereof from their title, and in a second cause of action sought judgment for $900.00 as rent and possession of the land in question. At the conclusion of plaintiffs' evidence, and upon motion of defendant, the court entered its judgment dismissing the complaint, to review which this writ of error is prosecuted.

The evidence disclosed that on April 8, 1937, James W. Bainbrich and Nellie B. Bainbrich, husband and wife, were the owners of a ranch consisting of approximately two hundred and forty acres and certain ditch rights, in Rio Blanco county, subject to encumbrances amounting to $2,950.00. On said day they executed and delivered their warranty deed to their ranch property to Rio Blanco county, subject to the encumbrances. The consideration for the conveyance was financial assistance theretofore and in the future to be advanced by Rio Blanco county for their needs. Upon the delivery of the deed, the Bainbrichs moved into Meeker, where the county rented a house and provided funds for their use and hired a nurse or woman to help them. It is admitted that the total amount paid by Rio Blanco county under this arrangement from January 1, 1936, to and including April 4, 1938, aggregated $2,137.05.

On July 16, 1938, the board of county commissioners of Rio Blanco county made, executed and delivered to the defendant a warranty deed to the property conveyed to them by the Bainbrichs, and the same was thereafter recorded in the office of the county clerk and recorder. The elder Bainbrichs having died, the plaintiffs commenced this action on August 22, 1939.

The four specifications of points are: "1. The court erred in ordering the dismissal of the complaint of the plaintiff. 2. The court erred in holding that the first cause of action set forth in plaintiffs' complaint was not sustained by the evidence. 3. The court erred in holding that the second cause of action set forth in plaintiff's complaint was not sustained by the evidence. 4. The court erred in excluding testimony offered by the witness Art Ebler concerning the reasonable market value of the property in controversy.."

Plaintiffs take the position that the deed from the Bainbrichs to Rio Blanco county conveyed no title whatever and is therefore void, and in support of their position rely upon section 1, chapter 45, '35 C.S.A. They contend that the county, being a creature of the legislature and deriving its power from legislative acts, is limited strictly to the purposes set forth in that section. The applicable part of section 1, supra, upon which plaintiffs' reliance is placed, reads: "Each organized county within the state shall be a body corporate and politic, and as such shall be empowered for the following purposes: * * * Second—To purchase and hold real and personal estate for the use of the county, and lands sold for taxes by law. * * * "

It is conceded that the deed in question was executed for the purpose of repaying the county such sums as it had advanced for the relief of this aged couple and such sums as would be necessary for the county to advance in the future to alleviate their suffering and supply their needs.

Plaintiffs further take the position that if the elder Bainbrichs required assistance from the county the only and exclusive method for the county to secure repayment for the sums so advanced is that provided in section 3, chapter 124, '35 C.S.A.

It must be conceded that if the county acquired a good and sufficient title under its deed from the Bainbrichs, the judgment is right and must be affirmed. No

other specification of points need, under these circumstances, be noted, and upon the question of whether the county was a necessary and indispensable party, we need express no opinion.

The question for our determination is whether the action of the county in accepting the deed from the Bainbrichs was ultra vires, and, if so, could be set aside and adjudged to be void in a suit brought by plaintiffs, notwithstanding the admitted fact that the contract between the Bainbrichs and the county was fully consummated and the obligations arising thereunder completely fulfilled. "A party to a contract with a county cannot evade his obligations under the agreement on the ground that the contract was ultra vires as to the county where the latter has fully performed." 20 C.J.S., p. 1029, §193.

Counsel for plaintiffs take the position that the phrase "for the use of the county" as the same is found in section 1, supra, limits the purchase and possession of real estate to such property as the county may require "for some legitimate county purpose, such as the erection thereon of some county edifice, or other use of the *property itself* to further the purposes for which the county is created." In support of this position counsel call our attention to the wording of the Minnesota statute with reference to the powers of counties and rely upon the construction of the Minnesota statute in *Williams v. Lash*, 8 Minn. 441, and *Shelley v. Lash*, 14 Minn. 498. The Minnesota statute in question reads: "* * * each county shall continue to be a body politic and corporate for the following purposes, to wit: * * * to purchase and hold for the public use of the county, lands lying within its own limits, and any personal estate; * * *." In construing this statute, the syllabus in *Williams v. Lash, supra,* supported by the opinion, reads: "A county has no capacity to become purchaser of real estate, sold on execution in its favor, where the purchase is not made for the public use of the county within the

meaning of sec. 251, p. 109, Compiled Statutes." The statute referred to in the syllabus is that hereinabove quoted. To the same effect *Shelley v. Lash, supra.*

We believe the construction of the Minnesota court to be unreasonably narrow and restricted and call attention to the fact that the phraseology of the Colorado statute is different from that in Minnesota as it existed at the time of the Williams-Lash and Shelley-Lash decisions, supra.

Our study has brought to our attention decisions which we believe correctly interpret and construe the meaning of section 1, chapter 45, '35 C.S.A.

In *Benedict v. Board of Com'rs,* 161 Okla. 50, 17 P. (2d) 454, an action was brought by the heirs at law of a grantor to prevent the leasing of certain property to which they claimed title. The county claimed its title by virtue of a warranty deed executed by plaintiffs' ancestors. It was the contention of the plaintiffs that the county was without authority to acquire the fee simple title to the land for highway purposes and that an easement only could be acquired, and upon abandonment of the easement the title reverted to the plaintiffs. The trial court found against plaintiffs' contention and entered a judgment in favor of the county. The Oklahoma statute involved reads: "Each organized county within the state shall be a body corporate and politic and as such shall be empowered for the following purposes: * * * Second. To purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law." The Oklahoma statute, it will be seen, is in the exact words of our statute. In determining the power of the county, it is said: "The mere fact that the county may have taken a deed conveying to it the fee-simple title for a purpose not authorized by law, does not render the deed absolutely void. *Neither the parties who conveyed the land, nor their heirs can complain or maintain an action to set aside the deed, or recover the land; the state alone can,*

*as a general rule, complain, and it alone can maintain
an action to divest the county of title thereto.* [Many
decisions cited and quoted] * * * Under these authori-
ties, plaintiffs cannot maintain this action. If the county
has exceeded its authority in acquiring the fee-simple
title to the land, as a general rule, the state alone can
complain." (Italics ours)

In *Campbell v. Board of Com'rs*, 167 Okla. 510, 30 P.
(2d) 910, the syllabus, supported by the opinion, reads:
"Where land is conveyed to a county for good and valu-
able consideration, the grantor cannot question the right
of such body to own and possess and sell such land, the
power to call into question such a right being in the
state alone."

In *Raley v. Umatilla Co.*, 15 Ore. 172, 13 Pac. 890,
heirs of the grantor sought to quiet title to property
conveyed to Umatilla county for limited purposes, con-
tending that the county was not authorized under the
statute to acquire and hold the title for the purposes
indicated. The pertinent statute provided: "Each
county shall continue to be a body politic and separate
for the following purposes, to wit: * * * to purchase
and hold *for the use of the county* lands lying within
its own limits, * * *" (Italics ours) Judgment was en-
tered in favor of the county, and upon appeal, the judg-
ment was affirmed. Paragraph 1, of the Pacific Reporter
syllabus, supported by the opinion, reads, in part:
"* * * where a conveyance is made to a county of land
for the special use of educational purposes, in an action
by the heirs of the grantor against the county to quiet
title to the land, the heirs cannot raise the objection
that the deed conveyed property to the county for other
and different purposes than those specified in the stat-
ute." In the opinion we find: "By the terms of the sec-
tion above quoted a county may purchase and hold *for
the use of the county* lands lying within its own lim-
its. Counsel for the appellants claim that the term 'for
the use of the county' is to be taken as a limitation upon

the power of the county to take, and that therefore, unless it plainly appears that the deed is taken for some purpose or object which the legislature had previously pointed out or authorized by some act, the grant is a nullity and confers no title. I doubt the correctness of this construction. It is harsh, and in many instances, if rigidly applied, might tend to defeat the very object of the legislature in the creation of such corporations. While the subject is not entirely free from difficulty, and it is conceded there is a conflict of authorities on the subject, still the later and better view is that both counties and cities may take land by purchase, gift, or devise, under charters and statutes of the same legal import as our own."

*Barnes v. Multnomah County,* 145 Fed. 695, was an action in ejectment in which plaintiff sought to recover the possession of lands which his ancestor had theretofore conveyed to certain individuals as county commissioners of Multnomah county. Plaintiff contended that the property was not conveyed "for the use of such county" as that phrase is used in the statute. In connection with the right of the county to receive and hold under the deed of plaintiff's ancestor, it is said:

"Thus, in effect, holding that, notwithstanding the county may not have the requisite power to hold property for the purpose for which it might be conveyed, yet, having authority to hold for some purpose, and a conveyance having been made, the grantor is precluded from questioning the capacity of the county to take that which he has conveyed, which is a matter entirely for the state. * * *

"The statute * * * empowers the county to purchase and hold for its use 'lands lying within its own limits.' Here is authority to purchase and hold land, but whether in fact it has purchased, or whether a particular piece of land it has taken over to itself was for the use of the county, are questions that, while they may concern the individual as a member of the body

politic, are not such as he is permitted to raise. This is essentially so as it relates to the individual in general. These are matters for the public service, for the state, as indicated by the authorities above. If the individual in general cannot question the use for which realty is purchased by the county, there exists no greater reason why the individual who has parted with his land to the county for a consideration should be permitted to question it. He stands in no better position for urging, that the property is not properly or appropriately for the use of the county than the individual in general. The property is not his when he has parted with it, and, having no interest therein, he can with no greater reason be heard to urge that it is not, or cannot be, for the use of the county; so that unless it appears that the deed set out in the reply is insufficient for some reason to convey this property to the county, the plaintiff cannot now question the title by which the county holds."

We are not without authority in Colorado on this question. In *Stewart v. Commissioners,* 80 Colo. 232, 250 Pac. 562, the plaintiff brought an action to quiet title to certain lands which she and her father had transferred to Phillips county in consideration for certain moneys advanced and to be advanced for her father's care, and certain advances for her use.

One of the principal grounds relied upon by plaintiff was section 1, chapter 45, '35 C.S.A. It was contended that the deed from plaintiff and her father was void because ultra vires. It was undisputed that the county had fully performed the contract entered into between the parties. In the opinion it is said with reference to ultra vires: "To the claim that the contract was ultra vires we do not assent, but, if true, it is immaterial because the county has fully performed [citing cases]."

In *Stewart v. Commissioners, supra,* the county held the legal title to the land in question, nevertheless, the judgment was that its deed was a mortgage and established only a lien which was to be enjoyed by the

county to the extent of whatever sum it had paid or advanced under its contract to provide for the grantors.

The action here tenders no equitable issues nor does the record disclose any.

The trial court did not err in its judgment.

Judgment affirmed.